RICHARD E. SCHULTZ, Individually and as Administrator of the Estate of CHRISTOPHER SCHULTZ, Deceased, and as Father and Natural Guardian of RICHARD SCHULTZ, et al., Appellants, v BOY SCOUTS OF AMERICA, INC., et al., Respondents, et al., Defendants.

First Department, May 24, 1984

#### APPEARANCES OF COUNSEL

*David Jaroslawicz* for appellants.

*Franklin N. Meyer* of counsel (*Morgan, Melhuish, Monaghan, Meyer, Arvidson, Abrutyn & Lisowski,* attorneys), for Boy Scouts of America, Inc., respondent.

*William P. Ford* of counsel (*Stuart C. Levene* with him on the brief; *Ford Marrin Esposito & Witmeyer,* attorneys), for Franciscan Brothers of the Poor, Inc., respondent.

#### OPINION OF THE COURT

ASCH, J.

Plaintiffs herein are Margaret and Richard Schultz. Plaintiff Richard E. Schultz sues on behalf of himself, as administrator of his son Christopher's estate and also on behalf of his son Richard. He alleges that both sons, Richard and the now deceased Christopher, were sexually

abused by defendant Edmund Coakeley. The sexual acts took place at the church and school in New Jersey where defendant Coakeley was employed. Other acts took place at a Boy Scout camp located in up-State New York during the summer of 1978, where Coakeley was acting as a troop leader. Allegedly, as a result of these events, both brothers received psychiatric care and Christopher committed suicide in 1979. This action was commenced for wrongful death and for the injuries sustained as a result of the allegedly wrongful acts. The same plaintiffs initiated another action in New Jersey Superior Court based upon the same facts, against the Roman Catholic Archdiocese of Newark.

At Special Term, both defendants-respondents herein moved for summary judgment. Special Term granted the motions on the ground that New Jersey's charitable immunity statute (NJ Stats Ann, § 2A:53A-7) was applicable, and since courts in the New Jersey case had applied such statute to the plaintiffs' claim in New Jersey, plaintiffs were barred by collateral estoppel in this action. Hence this complaint was dismissed. Plaintiffs appeal.

The plaintiffs argue for application of the law of the place where the wrong occurred, in their view, New York, where there is no charitable immunity. But more than half the States, including New York, within the last quarter of a century, have rejected the rule of *lex loci delicti*. And more significantly, even if this doctrine were viable in the State, under the facts presented, the law of New York as to the liability of charitable institutions should not be applied.

Essentially, the complaint is based upon the claim that the defendants were negligent in hiring and/or supervising the defendant Coakeley, the alleged perpetrator of the sexual acts. Although there were torts which took place in New York, much of the sexual abuse of the two boys took place in New Jersey. What is more significant from the legal point of view is that the alleged wrongful hiring and supervision all took place in New Jersey. Certainly the injured parties were residents of New Jersey, as were the defendants.

New York had been enrolled in the ranks of those States which have rejected the traditional "choice of law" rule in favor of a more flexible "grouping of contacts" for determination of which jurisdiction's law to apply (*Babcock v Jackson,* 12 NY2d 473).

The plaintiffs and defendants were New Jersey residents, the main acts and omissions occurred in New Jersey, all relationships were centered in New Jersey, and thus, New Jersey is the only State with any real interest in the matter. New York has no legislative interest in doing more for citizens of New Jersey than New Jersey has decided to do. To do otherwise would do violence to the public policy of New Jersey to encourage the growth of charitable-educational entities within its boundaries, as indicated by its charitable immunity statute. Professor Harold L. Korn in a most comprehensive and scholarly analysis has pointed out that for the forum court to apply its local public policy in a choice of law situation where the parties are residents of another State, where they have an abiding relationship, is an unwarranted act of arrogation and perhaps unconstitutional. (See Korn, The Choice-of-Law Revolution: A Critique, 83 Col L Rev 772.)

In any event, there does not appear to be a strong public policy preventing a New York court from applying this New Jersey statute. The case of *Rakaric v Croatian Cultural Club "Cardinal Stepinac Organization"* (76 AD2d 619), which refused to apply the New Jersey charitable immunity statute (NJ Stats Ann, § 2A:53A-7), is inapposite. There, it should be noted, both plaintiff and defendant had their residences in New York. The place of the tort, an accident in New Jersey, was only fortuitous. The case of *Dowd v Boy Scouts of Amer.* (NYLJ, March 21, 1984, p 13, col 1) lends additional support for the application of the New Jersey charitable immunity statute to plaintiffs' claims against the defendants-respondents.

In *Dowd (supra),* the court did nothing more than follow the well-established choice of law principle that New York courts will apply New York law to a claim or issue *that has a strong underlying connection with New York,* providing New York with a legitimate interest in its resolution. In *Dowd,* the New York connection was provided by the

plaintiffs and defendant being New York residents and the plaintiffs' injuries occurring on land which, though in New Jersey, was "held in trust and maintained by a New York State corporation."

As a result of these strong New York connections, the *Dowd* court determined that "[t]he interest of the State of New Jersey in providing immunity in this case is so minute that the State of New York would find it totally outweighed by its own." Here, the situation is different from that considered in *Dowd* (*supra*).

Plaintiffs and the defendants-respondents are, and at all relevant times were, residents of the State of New Jersey. Additionally, the alleged negligence of the Franciscan Brothers — the alleged negligent "hiring" of defendant Edmund Coakeley to teach in the Assumption School of the Archdiocese, failure to fire Coakeley and causing of emotional distress to Mr. and Mrs. Schultz — occurred, if at all, in New Jersey. Likewise, the alleged negligent appointment of Coakeley by the Boy Scouts, as well as the alleged negligent failure to remove Coakeley as troop leader by the Boy Scouts, occurred wholly in New Jersey.

In short, there is neither a connection between plaintiffs' claims against the Franciscan Brothers and the Boy Scouts and New York nor any legitimate interest of New York upon which to base the application of New York law to those claims. Under New York's choice of law rules, the law of New Jersey — the only State with any connection with and interest in plaintiffs' claims against the defendants-respondents — should be applied to plaintiffs' claims against the defendants-respondents (see *Nader v General Motors Corp.*, 25 NY2d 560, 565).

It will be recalled that the plaintiffs brought two actions for precisely the same injuries, one in the Supreme Court of New York County and a subsequent action in New Jersey.

The central issue in both the New Jersey action and the New York action is identical: are plaintiffs' claims against a charitable educational entity barred by the New Jersey charitable immunity statute (NJ Stats Ann, § 2A:53A-7)?

After hearing full and extensive argument from both sides, the New Jersey Superior Court decided the charita-

ble immunity issue against plaintiffs and held plaintiffs' claims barred in their entirety by the New Jersey charitable immunity statute.

In recognition of the wholly dispositive effect of the New Jersey court decision on this action, plaintiffs' counsel, both in the Supreme Court and before this court, asked that proceedings be deferred until the matter was finally resolved by the New Jersey courts.

The matter has now been finally resolved by the New Jersey Supreme Court (95 NJ 530). The court has affirmed dismissal of plaintiffs' claims on grounds they are barred in their entirety by the New Jersey charitable immunity statute (NJ Stats Ann, § 2A:53A-7), which determination is, of course, wholly dispositive here, dictating affirmance of Special Term which similarly dismissed plaintiffs' claims as barred by the New Jersey charitable immunity statute.

Furthermore, the decision of the New Jersey Supreme Court reinforces the collateral estoppel effect of the dismissal of plaintiffs' claims in the New Jersey action. Plaintiffs have never disputed that the claims they assert against the Franciscan Brothers and Boy Scouts are identical to those they asserted against the Archdiocese in the New Jersey action. Nor have they contested that the bases alleged for the liability of the Archdiocese and the defendants-respondents are basically the same — i.e., the allegedly negligent "hiring" of Coakeley to work at the Assumption School in Newark and allegedly negligent appointment and failure to remove him as troop leader.

The New Jersey Supreme Court's decision that plaintiffs' claims are barred by the New Jersey charitable immunity statute, therefore, collaterally estops them from relitigating those claims against the defendants-respondents in this action.

This conclusion is fortified by the case of *Schwartz v Public Administrator of County of Bronx* (24 NY2d 65), which supports the view that the result here is mandated by collateral estoppel. The issue decided by the New Jersey Supreme Court was the same as that presented herein. The resolution of the issue presented was necessary to the determination made in New Jersey, and the plaintiffs

herein against whom it is sought to be applied had a full and fair opportunity to litigate that issue in New Jersey. Accordingly, applying the doctrine of issue preclusion, defendants are now sheltered from suit in accordance with the applicable charitable immunity statute.

It is thus clear that New Jersey law is fully applicable and wholly dispositive here. And, of course, this court is bound to apply such law not simply under New York's choice of law rule, but also under well-established principles of due process and the full faith and credit clause of the United States Constitution. Our courts cannot reject a sister State's law and apply its own unless the forum has a significant connection to the issue (*Home Ins. Co. v Dick,* 281 US 397; *Hancock Ins. Co. v Yates,* 299 US 178).

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Williams, J.), entered March 4, 1983, which granted the motion and cross motion for summary judgment dismissing the complaint as against the defendant Franciscan Brothers and the defendant Boy Scouts, should be affirmed, without costs or disbursements.

MURPHY, P. J. (dissenting). Defendant Edmund Coakeley was a "brother" in defendant Franciscan Brothers of the Poor, Inc. (Franciscan Brothers). The provincial for that religious order avers that it is a nonprofit corporation organized in Ohio. The provincial further alleges that pursuant to an agreement, the Franciscan Brothers provided teachers for the Archdiocese of Newark (Archdiocese). Pursuant to the agreement, the Franciscan Brothers assigned Coakeley to teach in the Assumption School in Emerson, New Jersey. Coakeley was appointed scoutmaster for troop 337 during his assignment at the Assumption School.

This troop was chartered by defendant Boy Scouts of America, Inc. (Boy Scouts). During the relevant time period, the Boy Scouts had its national headquarters in North Brunswick, New Jersey. Its national headquarters are now located in Dallas, Texas. The troop was sponsored by "the Church of The Assumption School". Defendant Peter Grandy owned property in Forestport, New York; this property was called the Pine Creek Reservation (Res-

ervation). From time to time, the troop was taken to camp at the Reservation.

Plaintiffs Richard and Christopher Schultz, the sons of plaintiffs Richard E. and Margaret Schultz, were members of troop 337. In 1978, the plaintiff family lived in Emerson, New Jersey; the sons attended the Assumption School. During that year, Richard, then 13, and Christopher, then 11, were taken with other members of the troop to the Reservation. Suffice it to say that defendant Coakeley engaged both Richard and Christopher in homosexual encounters during camping periods at the Reservation. In the fall of 1978, Coakeley engaged in certain sadomasochistic activities with Christopher in Emerson, New Jersey.

Eventually, Richard informed his parents of the sexual encounters with Coakeley. Richard was placed under psychiatric care; his brother, Christopher, was later hospitalized. On May 28, 1979, Christopher committed suicide by ingesting drugs. His mother, Margaret, maintains that she was present at the time of the suicide. Shortly thereafter, Margaret suffered a nervous breakdown. Richard E. Schultz, the father, is also receiving psychiatric treatment.

The instant complaint contains four causes of action. In the first cause, Richard· E. Schultz, as administrator of Christopher's estate, seeks to recover damages of $1,500,000 for Christopher's wrongful death. In the second cause, that same administrator seeks to recover $3,000,000 damages for Christopher's pain and suffering. In the third cause, Richard E. Schultz, as the father and natural guardian of Richard, seeks damages of $2,000,000 for the pain and suffering experienced by that infant son. The plaintiff parents, in the fourth cause, seek to recover damages of $4,000,000 for the mental anguish and psychological distress which they have suffered in this tragic occurrence. Plaintiffs charge that the Boy Scouts was negligent in permitting Coakeley, a sexual deviant, to be a troop leader. They further charge that the defendant Franciscan Brothers was negligent in hiring and supervising Coakeley.

After this action was commenced, plaintiffs brought a similar action in the Superior Court of New Jersey against the Archdiocese. The Superior Court dismissed that action on the ground that it was barred by New Jersey's charita-

ble immunity statute (NJ Stats Ann, § 2A:53A-7). The Appellate Division affirmed that order of dismissal. On March 19, 1984, the Supreme Court of New Jersey, in a vote of 4 to 3, affirmed the Appellate Division's order of dismissal.

The first question presented upon appeal is whether this court has jurisdiction over the Boy Scouts and the Franciscan Brothers. In its papers, the Boy Scouts stated that it had no record of being served. Importantly, the Boy Scouts did not specifically deny that it was served with process. Moreover, the Boy Scouts did not explain how it was otherwise apprised of this proceeding. Plaintiffs submitted an affidavit showing that proper service was made upon the Boy Scouts in Dallas, Texas. Upon this state of the record, plaintiffs carried their burden of showing that jurisdiction had been obtained over the Boy Scouts. It is for this reason that the Boy Scouts have apparently abandoned this point in its appellate brief.

The Franciscan Brothers did not formally move at Special Term to dismiss the action as against it for lack of jurisdiction. Since that issue was not raised in the record, it may not be considered upon this appeal for the first time. In any event, the record is devoid of proof as to where or how the Franciscan Brothers was served. Therefore, any discussion on this matter would be totally speculative.

The second question is whether this action is barred under the doctrine of collateral estoppel. Relying upon the authority of *Schwartz v Public Administrator of County of Bronx* (24 NY2d 65), Special Term granted the motions for summary judgment dismissing this action under the principle of collateral estoppel. Essentially, Special Term reasoned that the dismissal of the New Jersey action against the Archdiocese barred the present action against the Franciscan Brothers and the Boy Scouts. Special Term found that the plaintiffs could not relitigate in this forum the issue of whether the New Jersey charitable immunity statute (NJ Stats Ann, § 2A:53A-7) was controlling upon the two charitable institutions named as defendants in this proceeding.

Under ordinary circumstances, this court should give "collateral estoppel" effect to an issue resolved in a New

Jersey proceeding. Nonetheless, the facts in this case are extraordinary. As will be developed below, charitable institutions no longer enjoy immunity in New York State. Therefore, as a matter of public policy, the courts in this State should refuse to extend the force of the New Jersey determination against the charities present in this proceeding. The New Jersey determination should be honored but should be limited in force to the parties involved in that forum.

The third question is whether New York or New Jersey law governs this case. Under New York law, a tort-feasor no longer enjoys immunity because it is a charitable institution (*Bing v Thunig,* 2 NY2d 656; 18 NY Jur 2d, Charities, §§ 109-110). Where the public policy of New York State conflicts with that of a foreign State, New York public policy must prevail. (*Ehrlich-Bober & Co. v University of Houston,* 49 NY2d 574, 580.) Neither the doctrine of comity nor the "Full Faith and Credit" clause requires this State to apply a foreign statute that is repugnant to its public policy. (*City of Philadelphia v Cohen,* 11 NY2d 401, 406.)

It must also be remembered that *lex loci delicti* remains the general rule in tort cases to be displaced only in extraordinary circumstances (*Cousins v Instrument Flyers,* 44 NY2d 698, 699). In this proceeding, all of Coakeley's deviate sexual encounters with Richard were in New York State. Many of the sexual assaults upon Christopher were in this State. It is evident that New York has a supervening interest in protecting all individuals within its boundaries from the type of criminal acts that were allegedly committed by Coakeley. It follows that New York also has a supervening interest in enforcing its civil law against an alleged tort-feasor such as Coakeley.

The first three causes are based upon defendants' negligent hiring and retention of Coakeley. Although the defendants' negligence in those areas may have originally occurred outside New York State, that negligence eventually impacted in this State (19 NY Jur 2d, Conflicts of Law, § 40, p 624). Specifically, Coakeley committed certain intentional torts in this State. There is no compelling reason to displace New York law with New Jersey law for those

intentional torts committed within the New York borders. To the extent that the first three causes seek damages for Coakeley's acts committed in New York State, the law of this forum shall apply. For Coakeley's acts committed in New Jersey, the law of that forum should apply.

With regard to the fourth cause, the parents' injuries occurred entirely in New Jersey. For that reason, New Jersey law should be exclusively applied to that cause.

In passing, it should be noted that there are two New York decisions dealing with this subject. In *Rakaric v Croatian Cultural Club "Cardinal Stepinac Organization"* (76 AD2d 619, app dsmd 52 NY2d 1072), a New York resident was injured in New Jersey while performing volunteer work for a New Jersey religious corporation. The Second Department dismissed an affirmative defense based upon the New Jersey charitable immunity statute. Justice Gibbons, speaking for the entire Bench, stated (*supra,* p 632): "The New York State policy of assuring full recourse in its own courts for injuries sustained by its domiciliaries outweighs any interest New Jersey may have in favoring its charitable institutions with the grace of immunity from liability for tort".

In the recent decision of *Dowd v Boy Scouts of Amer.* (NYLJ, March 21, 1984, p 13, col 1), two New York residents were injured in a Boy Scout camp in New Jersey. The two defendants were charitable and educational institutions organized in New York. Trial Term found (*supra,* p 13, col 2): "that the New Jersey statute is so contrary to the best interests of the citizens of New York and is so repugnant to New York's public policy that it cannot be afforded full faith and credit usually accorded to the law of a sister state."

The facts in *Rakaric* (*supra*) and *Dowd* (*supra*) are readily distinguishable from those in the present appeal. Nonetheless, it should be emphasized that the New Jersey charitable immunity statute was rejected in those decisions even though the injuries occurred in New Jersey. The present appeal presents a "stronger" case for the rejection of that statute because some of the infants' injuries occurred in New York State.

The fourth question is whether the Franciscan Brothers and the Boy Scouts should be granted summary judgment dismissing the complaint as against them. Upon such a motion, the evidence must be viewed most favorably to the plaintiffs. (*Cannon v Pfleider,* 19 AD2d 625.) With this criterion in view, defendants' motion and cross motion for summary judgment will be considered with regard to the first three causes of action insofar as they seek damages for acts performed by Coakeley in New York. As was discussed previously, New York law will be applied to those claims.

The record does not indicate whether defendant Coakeley received any form of compensation or sustenance from the Franciscan Brothers. Nonetheless, from the very nature of his relationship with the Franciscan Brothers, it may be said with relative certitude that he did receive financial and other support from that religious body. Moreover, he was ultimately under the supervision and control of that religious body. By analogy, it may be reasonably said that Coakeley was "employed" by the Franciscan Brothers and that he acted as a "servant" for that order.

It should be stressed that the plaintiffs in the first three causes make no attempt to recover against the Franciscan Brothers under the theory of *respondeat superior.* Plaintiffs recognize that Coakeley's acts were not performed with a view toward his service with the Franciscan Brothers. (37 NY Jur, Master and Servant, § 162.) Instead, they seek recovery upon the theory that the Franciscan Brothers negligently hired defendant Coakeley (*Hall v Smathers,* 240 NY 486; *Wimmer v Pratt Inst.,* 63 AD2d 885; cf. *Stevens v Lankard,* 31 AD2d 602, affd 25 NY2d 640; 37 NY Jur, Master and Servant, § 164).

The record is silent as to whether the Franciscan Brothers knew that Coakeley had these degenerate tendencies when he was received as a member of that order. Obviously, this is a matter within the exclusive knowledge of the Franciscan Brothers. Under such circumstances, summary judgment should be denied to the Franciscan Brothers so that plaintiffs may depose that religious body and develop all information necessary for a proper determination of the action (*Platzman v American Totalisator Co.,* 57 AD2d 755, affd 45 NY2d 910).

It should also be stressed that Richard E. Schultz, the father, states in an affidavit that he learned that Coakeley had previously been dismissed from a different Boy Scout troop for improper conduct. The Franciscan Brothers do not address Schultz' statement relating to Coakeley's history of prior improprieties. This is a prominent matter which must be explored at disclosure in order to ascertain the knowledge of the Franciscan Brothers upon this specific topic.

In order to hold the Boy Scouts responsible for negligence in permitting Coakeley to be a scoutmaster, an analogy must again be drawn with the master-servant relationship. (See, generally, Liability of Charitable Organization under *Respondeat Superior* Doctrine for Tort of Unpaid Volunteer, 82 ALR3d 1213.) Plaintiffs must show that Coakeley, an unpaid volunteer, was in service to the Boy Scouts and that he was under the supervision and control of the Boy Scouts. In his affidavit, Richard E. Schultz attested to various actions on the part of the Boy Scouts which suggested that it exercised supervision over both the Reservation and Coakeley. Even if it were assumed that all of Schultz' averments in that affidavit are true, there would be no showing that the Boy Scouts exercised immediate control and supervision over the Reservation or Coakeley. (Cf. *Davis v Shelton,* 33 AD2d 707, app dsmd 26 NY2d 829.) In any event, the Boy Scouts could not be held liable under the theory of *respondeat superior* for these intentional torts of Coakeley.

Nonetheless, Richard E. Schultz did maintain that Coakeley was previously dismissed from another Boy Scout troop for similar improprieties. The Boy Scouts do not deny this fact nor does it even address the subject. Although the Boy Scouts did not have direct and immediate supervision over Coakeley, it did have an affirmative obligation to relieve Coakeley of his duties with troop 337 if it knew Coakeley had a history of malfeasance with another troop. In other words, the rule in *Hall v Smathers* (*supra*), should be extended in this unique situation to make the Boy Scouts accountable for negligently permitting one of its unpaid volunteers or servants, a scoutmaster, to continue in his position despite knowledge that he should be terminated.

For the reasons stated, the motion and cross motion for summary judgment should be denied with regard to the claims in the first three causes arising from Coakeley's intentional torts in this State. To the extent that the first three causes seek damages for the tortious acts of Coakeley that occurred in New Jersey, the New Jersey charitable immunity statute (NJ Stats Ann, § 2A:53A-7) must be applied. Summary judgment must be granted to the defendants dismissing those claims.

Likewise, summary judgment must be granted dismissing the entire fourth cause because of that same statute. Parenthetically, it should be noted that the fourth cause would also be dismissed under New York law. The parents could not recover for their derivative mental anguish and psychological distress because they were not in the "zone of danger". (*Bovsun v Sanperi,* 61 NY2d 219.)

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Williams, J.), entered March 4, 1983, which granted the motion and cross motion for summary judgment dismissing the complaint as against the Franciscan Brothers and the Boy Scouts, should be modified, on the law, by denying so much thereof as sought to dismiss the claims in the first three causes founded upon Coakeley's tortious acts within New York. As modified, the order and judgment should otherwise be affirmed.

KUPFERMAN and FEIN, JJ., concur with ASCH, J.; MURPHY, P. J., and CARRO, J., dissent in part in an opinion by MURPHY, P. J.

Order and judgment (one paper), Supreme Court, New York County, entered on March 4, 1983, affirmed, without costs and without disbursements.