GOLDEN SPREAD COUNCIL, INC. # 562 OF THE BOY SCOUTS OF AMERICA AND BOY SCOUTS OF AMERICA, Petitioners

v.

Veronica AKINS, Individually and as Next Friend of C.C., a Minor, Respondent.

No. 95–0084.

Supreme Court of Texas.

Argued Nov. 28, 1995.

Decided July 12, 1996.

Scott Patrick Stolley, Dallas, Barry D. Peterson, Michael J. Sharpee, Amarillo, for petitioners.

Selden B. Hale, Amarillo, Richard N. Countiss, Houston, John Mann, Pampa, for respondent.

GONZALEZ, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HECHT, SPECTOR, OWEN, BAKER and ABBOTT, Justices, join.

This is a suit for damages filed on behalf of a minor who was sexually molested by his scoutmaster. Veronica Akins, the minor's mother, sued the Boy Scouts of America (BSA) and the Golden Spread Council of the Boy Scouts of America (GSC). The trial court granted BSA and GSC's motion for summary judgment. The court of appeals reversed and remanded with respect to both defendants. 888 S.W.2d 35. We affirm the court of appeals' judgment as to GSC, although we do not agree with its reasoning. We reverse the court of appeals' judgment as to BSA.

## I. Facts

Because this is an appeal of a summary judgment, we take as true evidence favorable to the non-movant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546,

548–49 (Tex.1985). In the summer of 1987, C.C., a fifth grader, was molested four times by Melvin Estes, the father of C.C.'s neighborhood classmate and friend. C.C. was not in the Boy Scouts at the time, and there is no allegation that BSA or GSC was responsible for any of these instances of abuse. A year later, another friend invited C.C. to join Boy Scout Troop 22. Unbeknownst to C.C., Estes was the assistant scoutmaster of Troop 22. Despite Estes's involvement, C.C. joined the troop. Estes did not molest C.C. while the two were associated with Troop 22. While on a camping trip with Troop 22, C.C. confided in several of his fellow scouts that Estes had molested him previously. Some of the other scouts told C.C. that Estes had tried similar acts with them. One of the scouts who overheard this discussion was Ricky Hearn, whose father Charles was the head scoutmaster of Troop 22. Ricky told his father about this conversation, and they reported the matter to Kevin Herbert, a GSC employee. The Hearns did not give Herbert any detailed information and did not mention specifically that sexual molestation was involved.

Herbert made a report to Myron Rosebrook, the Scout Executive for GSC. Herbert told Rosebrook that Ricky Hearn had overheard another boy say that Estes was "messing with some boys." Rosebrook directed Herbert to talk further with Charles and Ricky Hearn about the matter. After doing so, Herbert reported to Rosebrook that the Hearn and Estes families were involved in a family feud, that Ricky Hearn would not disclose any names of the boys to him, and that Ricky admitted the allegations came from a boy who was a "known liar." Based on this information, Rosebrook determined that the charges were unfounded. GSC did not relay any of this information to local law enforcement authorities or to BSA and undertook no further investigation into the allegations.

Shortly thereafter, a local church decided to start a scout troop of its own, Troop 223. Herbert and a district scout committee, which was a separate subdivision of GSC, had the responsibility of putting the church in contact with a potential scoutmaster.

Herbert and the committee introduced Estes to the church. The church then chose Estes as its scoutmaster and sent Estes's application to GSC and eventually to BSA. Herbert and Rosebrook did not inform the church of what they had heard from the Hearns.

After being made scoutmaster of Troop 223, Estes encouraged C.C. to leave Troop 22 and join his troop. Estes then resumed his advances toward C.C., molesting or attempting to molest him on at least two occasions after C.C. joined his troop. In January 1989, Estes was arrested for child molestation and, after a trial, was convicted and imprisoned. Estes was sentenced to twenty years imprisonment for sexual abuse of a child and five years for indecency with a child. The record does not reflect whether any offense for which Estes was convicted involved a boy in the Boy Scouts.

Akins sued BSA and GSC for negligent failure to properly screen, train, and supervise Estes and for their failure to remove Estes from his position as scoutmaster. Akins also sued Estes. The trial court granted summary judgment for both BSA and GSC and severed Akins's claims against Estes. The court of appeals reversed and remanded for trial, holding, among other things, that both organizations owed a legal duty to C.C. 888 S.W.2d 35. This case now comes before us to determine whether BSA and GSC owed such a duty. Because we conclude, under these facts, that BSA did not owe a duty that it breached, we reverse the judgment of the court of appeals and render judgment for BSA. However, because we conclude that GSC owed a duty under these facts, we affirm the judgment of the court of appeals as to GSC.

## II. *Boy Scouts of America*

The existence of a duty is a question of law for the court to decide from the particular facts of the case. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). In deciding whether to impose a duty, the court must balance several interrelated factors. We must weigh the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guard-

ing against the injury, and the consequences of placing the burden on the defendant. *Id.* We have also emphasized other factors, including whether one party had superior knowledge of the risk or a right to control the actor who caused the harm. *Graff v. Beard,* 858 S.W.2d 918, 920 (Tex.1993).

■ Here, it is undisputed that BSA had no knowledge of any allegations of sexual abuse by Estes before his selection as scoutmaster of Troop 223. BSA keeps a list of people reported to them as unfit for leadership, and BSA will refuse to commission a person on the list as a troop leader. Estes, however, was not on BSA's unfit list, and BSA had no way of knowing of Estes's past history with C.C. or any other boys. Thus, Estes's actions were not foreseeable to BSA. In addition, to place a duty on BSA to screen adult volunteers about whom it has no knowledge and over whom it has little or no control would be a tremendous burden. There are about 130,000 units nationwide run by approximately 1,300,000 adult volunteers. Therefore, under these facts, we hold that the BSA had no duty to screen an adult volunteer about whom it had no knowledge and over whom it had no right of control. *See Infant C. v. Boy Scouts of Am., Inc.,* 239 Va. 572, 391 S.E.2d 322, 324–26 (1990) (refusing to impose liability on BSA when BSA had no knowledge of scoutmaster's previous conviction for sexual molestation and had no part in selecting scoutmaster).

■ Akins also contends, and the court of appeals agreed, that BSA can still be held vicariously liable for any negligence by GSC under a *respondeat superior* theory. 888 S.W.2d at 44. However, the evidence in this case shows that GSC is a separate corporate entity from BSA and that BSA has no right to control GSC's activities. To carry out its programs in certain geographical areas, BSA charters local councils, like GSC, to have jurisdiction over a set area. GSC is one of about 400 of these local councils. Each local council is a separate non-profit corporation with its own articles of incorporation, bylaws, and board of directors. Thus, as a practical matter, BSA has no direct control over GSC's day-to-day activities.

This evidence demonstrates that GSC is not BSA's servant because the right to control remains the "supreme test" for whether the master-servant relationship exists. *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 590 (Tex.1964); *see also Anderson v. Boy Scouts of Am., Inc.,* 226 Ill.App.3d 440, 168 Ill.Dec. 492, 494–95, 589 N.E.2d 892, 894–95 (1992) (concluding that no agency relationship existed between BSA and scoutmaster who ran over infant while making delivery for troop because no direct control over his activities was shown). Thus, the court of appeals erred in holding that BSA could be found liable for the acts of GSC. We therefore reverse the judgment of the court of appeals and render judgment for BSA.

### III. *Golden Spread Council*

■ The court of appeals concluded that GSC owed a duty based on the principle of negligent hiring. 888 S.W.2d at 41–43. The fundamental problem with that conclusion is that GSC did not hire Estes. Thus, the facts of this case do not fit within the boundaries of the negligent hiring doctrine. Nevertheless, we must examine whether a duty exists in this case on other grounds. As stated above, this decision must be made by balancing several interrelated factors. *Phillips,* 801 S.W.2d at 525.

■ The injury to C.C. was foreseeable to GSC. As stated earlier, the summary judgment evidence shows that GSC knew of complaints that Estes was "messing with" some boy scouts and was concerned that they might be serious. Only two to three months later, a local church asked Herbert, a GSC employee, to introduce it to a potential scoutmaster. Herbert, with full knowledge of the allegations, recommended Estes to the church.

■ Taking all of the evidence and inferences from the evidence in support of Akins's position as true, we conclude that a factfinder could determine that Herbert and GSC, by recommending Estes, should have foreseen that they were creating an unreasonable risk of harm to the scouts in the newly formed troop. This foreseeability weighs heavily in favor of imposing a duty on GSC. However, foreseeability alone is not sufficient to justify

the imposition of a duty. *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex.1994). Thus, we must also consider other factors.

The risk and likelihood of injury are high in this case. The Boy Scout Handbook informs all scouts that their troop leader carries out his duties "because he likes boys and wants to help them become real men" and that the troop leader is "a friend to whom you can always turn for advice." By introducing a person about whom doubts had been raised to a church knowing that the church would likely put that person in a position of trust with young boys, GSC could be found to have actually increased the risk and likelihood of injury in this case. We have recognized that in some circumstances, at least, a person is under a duty to avoid such an affirmative act that may actually worsen a situation. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983).

Against the above factors, the Court must also weigh the social utility of GSC's conduct, the magnitude of the burden on GSC, and the consequences of placing such a burden on GSC. *Phillips*, 801 S.W.2d at 525. It is indisputable that the social utility of GSC's conduct is high. GSC provides the scouting program to various civic organizations, allowing morals and values to be taught to young boys. But the magnitude and consequences of imposing a limited duty on GSC are low. GSC was not obliged to investigate Estes on its own, or to risk liability for defamation by publishing the information it had received. If GSC should have known from the information it received from the Hearns that there was an unreasonable risk that Estes would molest boys, GSC simply should not have recommended Estes to the church sponsor of Troop 223.

On balance, all of these factors favor the imposition of a duty in this case. Moreover, the Legislature has voiced a strong policy to protect children from abuse by requiring "a person having cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse or neglect by any person" to "immediately make a report" to the proper authorities. TEX. FAM.CODE § 261.101(a). The Family Code also provides civil and criminal immunity to those who make such a report in good faith. *Id.* § 261.106(a).

Finally, we have also emphasized other factors in determining whether a duty exists, including whether one party has superior knowledge of the risk or the right to control the actor whose conduct caused the harm. *Graff*, 858 S.W.2d at 920. Both of these factors weigh in favor of imposing a duty on GSC in this case. Although GSC did not control the everyday activities of its chartered organizations and scoutmasters, it certainly was not obliged to recommend Estes. Article VI, section 4, clause 4 of the Rules and Regulations of the Boy Scouts of America states that the local councils, like GSC, "shall provide means for assisting chartered organizations in securing and training individuals to serve as unit leaders and assistants." In addition, Article VIII, section 1, clause 5 states that all recommendations for unit leadership are subject to local council approval before transmission to the BSA national office. These rules show that GSC might well have prevented Estes from being scoutmaster simply by not recommending him to the church.

Viewing all of these factors as a whole, we conclude that GSC owed a duty in this case. GSC clearly owed a duty to the church that asked GSC to introduce it to a potential scoutmaster. We hold that this duty also extends to the children and parents involved in Troop 223 who relied on GSC and those involved in selecting Estes to provide a scoutmaster who was fit to serve. GSC's affirmative act of recommending Estes as a potential scoutmaster to the church created a duty on the part of GSC to use reasonable care in light of the information it had received. *See Otis Eng'g*, 668 S.W.2d at 309. GSC's duty is best expressed in comment e to Section 302B of the *Restatement (Second) of Torts*, which recognizes that there may be liability "[w]here the actor has brought into contact or association with the other a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct, under circumstances which afford a peculiar opportunity or temptation for such misconduct." RESTATEMENT (SECOND) OF TORTS § 302B, cmt. e, ¶ D. Cases from other

jurisdictions support this conclusion. *See, e.g., L.P. v. Oubre,* 547 So.2d 1320, 1324 (La.Ct.App.1989) (concluding that parents stated negligence cause of action against local scout council where scout was sexually molested by scoutmaster); *Schultz v. Boy Scouts of Am.,* 102 A.D.2d 100, 476 N.Y.S.2d 309, 316 (1984) (Murphy, P.J., dissenting) (concluding that BSA had duty to discharge scoutmaster because it knew of his previous misconduct with boys); *Wilson v. Tobiassen,* 97 Or.App. 527, 777 P.2d 1379, 1383 (1989) (noting that plaintiff proved negligence where local scout council failed to investigate allegations of sexual abuse by scoutmaster); *cf. Souza v. Narragansett Council, Boy Scouts of Am.,* 488 A.2d 713, 715 (R.I.1985) (concluding that local council was not liable for injuries scout sustained in boxing match where no employee of council knew of boxing match).

Accordingly, we hold that if GSC knew or should have known that Estes was peculiarly likely to molest boys, it had a duty not to recommend him as a scoutmaster. We impose no other duty on GSC than this. Specifically, GSC had no duty to investigate Estes on its own or to divulge to the church sponsor of Troop 223 or others the information it had received from the Hearns. GSC's only duty was to exercise reasonable care, based on the information it received, in recommending scoutmasters.

The dissent argues that GSC owes no duty under a number of theories of liability and appears to attack the evidence of causation. We emphasize that the sole issue before us is whether GSC owed a legal duty under the theory of common-law negligence. Although we conclude that there are fact issues precluding summary judgment on this issue, we express no view on whether GSC breached its duty or whether GSC's actions were the cause of C.C.'s injuries, if any.

■ To the extent the dissent addresses common-law negligence, it focuses solely on the evidence of GSC's control over Estes. The dissent errs by concluding that absent a special relationship, there can be no duty in this case. 926 S.W.2d 293 (Enoch, J., dissenting). This Court, in *Bird,* 868 S.W.2d at 769–70, set forth the proper duty analysis.

First, the Court balanced the duty factors reiterated at length in this opinion. *Id.* at 769. The Court then, after deciding that these factors did not weigh in favor of imposing a duty, examined whether a special relationship existed. *Id.* at 770. This two-part analysis is proper when deciding whether a duty exists. There are some cases in which a duty exists as a matter of law because of a special relationship between the parties. *Otis Eng'g,* 668 S.W.2d at 309. In such cases, the duty analysis ends there. However, in most negligence cases a special relationship does not exist and, contrary to the dissent's view, the duty factors must be weighed by the Court. If the dissent's conclusion that without a special relationship there can be no duty were correct, there could be no recovery in most negligence cases. In this case, the Court, consistent with the analysis in *Bird,* weighed the duty factors. Because we conclude that these factors weigh in favor of imposing a duty, we need not consider whether a special relationship exists.

Also, the dissent errs by concluding that this is a "duty to control" case. We are not imposing a duty on GSC to control Estes's sexual conduct. The dissent incorrectly focuses on control to the exclusion of the other factors we must balance when deciding whether a duty exists. It is well established that the issue of whether a duty exists is to be decided by balancing several interrelated factors listed earlier in this opinion. *See, e.g., Bird,* 868 S.W.2d at 769; *Graff,* 858 S.W.2d at 920; *Phillips,* 801 S.W.2d at 525; *El Chico,* 732 S.W.2d at 311; *Otis Eng'g,* 668 S.W.2d at 309. In our opinion today, we have balanced these factors while being careful to follow the proper standard of review.

■ In conclusion, we recognize that there is no way to ensure that this type of conduct will never happen, despite an organization's best efforts. However, GSC and similar organizations deal with children. The public has a strong interest in protecting children from abuse, and parents put their trust in such organizations. Having undertaken to recommend a potential scoutmaster for the church, GSC had a duty to use reasonable care in doing so to prevent an unrea-

sonable risk of harm to C.C. and others who would be affected. GSC breached that duty if it knew or should have known that Estes was peculiarly likely to molest boys. On this record, this is the issue determinative of GSC's liability. Fact issues exist with regard to whether GSC breached its duty, warranting a trial. Thus, summary judgment for GSC was improper. We therefore affirm the judgment of the court of appeals as to GSC.

CORNYN, J., concurs.

ENOCH, J., concurs and dissents.

Justice CORNYN, concurring.

I agree with the Court's judgment, which remands this case for a trial. I write separately, however, because section 261.101(a) of the Family Code imposes an independent duty to report abuse or neglect of a child, and that duty should be acknowledged by the Court as an additional basis of civil liability. Instead, under the narrow duty imposed by the Court, a person who knows that a child has been abused, but who does nothing, is absolved from civil liability for whatever preventable harm is subsequently done to the child—harm that might have been prevented had that person merely dialed the telephone and reported it to authorities.

Section 261.101(a) provides that "a person having cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse or neglect by any person shall immediately make a report as provided by this subchapter." The report must be made to a local or state law enforcement agency, or under certain circumstances, to other government agencies. TEX. FAM. CODE § 261.103. A person who has cause to believe that a child may be subject to abuse or neglect and knowingly fails to report the situation to an appropriate authority commits a criminal offense, a class B misdemeanor. TEX. FAM.CODE § 261.109.

Tort law, like the criminal law, is concerned with the prevention of future harm. See KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS, § 4, at 25 (5th ed. 1984) (referring to the "prophylactic" purpose of tort law). Thus, it should not be surprising that a penal statute may in itself create a

legal duty in a civil case, separate and apart from any duty imposed by common law. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex.1987); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985). The unexcused violation of a statute may be negligence per se if the statute is designed to prevent an injury to the class of people to which the injured party belongs. *El Chico Corp.*, 732 S.W.2d at 312; *Nixon*, 690 S.W.2d at 549. A violation of section 261.101(a) of the Family Code, in my opinion, fits this well-established paradigm for civil liability and should be adopted by the Court.

The Court implicitly recognizes the force of this argument by citing section 261.101(a) and the strong public policy underlying the Legislature's adoption of this statute as support for its adoption of a narrow legal duty in this case. 926 S.W.2d at 291. Yet, for reasons its opinion does not explain, the Court stops short of holding that section 261.101(a) imposes a legal duty. I do not agree with this arbitrary limitation, and therefore I concur in the Court's judgment.

Justice ENOCH, concurring in part and dissenting in part.

The Court correctly concludes that the Boy Scouts of America cannot be liable to C.C. because it owed no duty to C.C. and it was not otherwise vicariously liable to C.C. for Estes's actions. 926 S.W.2d at 292. Thus, I concur in the Court's judgment in part. The Court today, though, adopts a new common law cause of action for Texas—the duty to not negligently refer one individual to another. And this duty not only runs to the one to whom the referral is made, but also to whomever is injured by the individual referred. I would not adopt such a duty. Therefore, I must dissent in part.

The record in this case is virtually undisputed. I simply emphasize that C.C. was abused by Estes on a number of occasions, all before C.C. had any connection with the scouting program. And C.C. rejected the two sexual advances that form the basis of this suit and that were made by Estes while C.C. was a scout in Troop 223.

I begin by noting that C.C.'s mother has sued the Council under two major theories. The first is that the Council failed to properly train, supervise, investigate, and ultimately remove Estes as the scoutmaster. The second is that the Council failed to warn the sponsoring organization of Estes's dangerous propensities. To recover under the first theory, C.C.'s mother must succeed in proving that the Council was negligent in hiring Estes. In Texas, an employer who negligently hires an incompetent or unfit individual may be liable to a third party whose injury was proximately caused by the employee's negligent or intentional act. *Salinas v. Fort Worth Cab & Baggage Co.*, 725 S.W.2d 701, 703–04 (Tex.1987); *King v. McGuff*, 149 Tex. 432, 234 S.W.2d 403, 405 (1950); *see Dieter v. Baker Serv. Tools*, 739 S.W.2d 405, 408 (Tex. App.—Corpus Christi 1987, writ denied); *Estate of Arrington v. Fields*, 578 S.W.2d 173, 178 (Tex.Civ.App.—Tyler 1979, ·writ ref'd n.r.e.). But the Council did not hire Estes. The Council, therefore, is not liable under a negligent hiring theory, a point the Court concedes. 926 S.W.2d at 290.

Under the second theory—that of failing to warn—C.C.'s mother must prove that the Council is in a special relationship with Estes, the individual causing the personal injuries. There is no duty to warn of another's dangerous propensities unless there is a special relationship between the alleged tortfeasor and the dangerous person. In *Greater Houston Transp. Co. v. Phillips*, we said:

> Generally, there is no duty to control the conduct of third persons.... This general rule does not apply when a *special relationship* exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct.... These include the relationship between employer and employee, parent and child, and independent contractor and contractee under special circumstances.

801 S.W.2d 523, 525 (Tex.1990)(emphasis added). Likewise, without a special relationship, a party does not have a duty to warn of another's dangerous propensities. *See J.A.W. v. Roberts*, 627 N.E.2d 802, 809 & 813 (Ind.Ct.App.1994); *Moore v. St. Joseph Nursing Home, Inc.*, 184 Mich.App. 766, 459 N.W.2d 100, 102–03 (1990); *Cohen v. Wales*, 133 A.D.2d 94, 518 N.Y.S.2d 633, 634 (N.Y.App.Div.1987). The Court tacitly agrees that "control" is an element necessary to justifiably impose a duty upon the Council. 926 S.W.2d at 289. I agree with this assessment. *See, e.g., Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 198–99 (Tex.1995)(control over security must be present before liability for failing to provide security at parking garage can be assessed); *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex.1993)(central focus in premises liability action is control over the instrumentality causing the plaintiff's injury); *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 20 (Tex.1987)(employer not liable for conduct of independent contractor if no control); *see also* Kahn, *Organizations' Liability for Torts of Volunteers*, 133 U. Pa. L. Rev. 1433, 1441–42 (1985)(examining the degree and character of charitable organizations' control over their volunteers that could impose liability). Conspicuously absent in this case is the Council's control over Estes. I note only that the Court skirts this missing element by weakly concluding that had the Council not given Estes's name to the new troop sponsor, it "might well have prevented Estes from being scoutmaster...." 926 S.W.2d at 291.

Instead of reversing the judgment of the court of appeals, which held to the contrary on the first theory and did not address the second, the Court searches for and finds a new theory of recovery—one that was neither alleged, nor briefed, nor argued, and one this Court has rejected in past years. The Court holds that the Council had a "duty not to recommend [Estes] as a scoutmaster ... if [it] knew or should have known that Estes was peculiarly likely to molest boys." 926 S.W.2d at 292. Despite the obvious implications of its holding, the Court explains that its "limited" duty to not recommend Estes as a potential scoutmaster does not encompass the duty to investigate or warn others of Estes's dangerous propensities. This notion, however, is fundamentally inconsistent; according to the Court, the Council's duty to avoid recommending Estes arises only *after* it has undertaken to recommend Estes. Reducing this duty to its effect, the Council breaches its duty only if it recommends

Estes without also disclosing the allegations made against him. The Court is simply describing a negligent misrepresentation cause of action for a non-pecuniary injury. *See Randi W. v. Livingston Union Sch. Dist.*, 41 Cal.App.4th 400, 49 Cal.Rptr.2d 471, 483 (1995); RESTATEMENT (SECOND) OF TORTS § 311 (1965).

A quick look at *Restatement (Second)* section 311 demonstrates my point. Section 311 provides:

(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results

(a) to the other, or

(b) to such third persons as the actor should expect to be put in peril by the action taken.

(2) Such negligence may consist of failure to exercise reasonable care

(a) in ascertaining the accuracy of the information, or

(b) in the manner in which it is communicated.

RESTATEMENT (SECOND) OF TORTS § 311 (1965). The similarities between the duty adopted by the Court today and section 311's duty are striking. Even more striking is that this Court has refused to recognize the tort of negligent misrepresentation for a non-pecuniary injury. *See Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991). And as recently as last year, when called to do so, we did not. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 482–83 (Tex.1995)(Gammage, J., joined by Hightower, Cornyn & Spector, JJ., dissenting).

In Texas, the only cause of action for negligent misrepresentation that exists is if (1) the representation is made by a defendant in the course of his or her business, or in a transaction in which he or she has a pecuniary interest, (2) the defendant supplies false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffers *pecuniary* loss by

justifiably relying on the representation. *Federal Land Bank Ass'n of Tyler*, 825 S.W.2d at 442. That claim is not present in this case.

Not acknowledging the true duty it imposes, the Court asserts that it is following paragraph D of comment e to section 302B of the *Restatement (Second) of Torts*. But section 302B states:

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

And comment e and paragraph D to this section provide:

There are … situations in which the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal misconduct of others. In general, these situations arise when the actor is under a special responsibility toward the one who suffers the harm, which includes the duty to protect him against such intentional misconduct; or where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account.

\* \* \*

[This duty is breached w]here the actor has brought into contact or association with the other a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct, under circumstances which afford a peculiar opportunity or temptation for such misconduct.

RESTATEMENT (SECOND) OF TORTS § 302B, cmt. e, ¶ D (1965). These provisions do not address the issues in the present case. And as I have mentioned, the parties neither pleaded, nor briefed, nor argued that these provisions applied.

Furthermore, neither of the illustrations accompanying paragraph D is remotely related to the factual pattern of this case. In the

first illustration, an employer hires a violent employee, knowing the violent tendencies of the employee, and that employee injures another. *Id.* § 302B, cmt. e, ¶ D, ill. 9. This does not illustrate a duty to avoid a negligent recommendation—it illustrates the *negligent hiring* doctrine, which the Court concedes is not applicable to this case. 926 S.W.2d at 290. In the next illustration, a common carrier places its passenger in harm's way by depositing the sleeping passenger near woods in which violent hobos are known to reside. *Id.* § 302B, cmt. e, ¶ D, ill. 10. But common carriers already have a well-defined duty to their passengers irrespective of section 302B. *See Houston Transit Co. v. McQuade,* 223 S.W.2d 64, 65 (Tex.Civ.App.—Galveston 1949, writ ref'd)(duty to discharge passengers in a reasonably safe place). These illustrations are illuminating, but do not support the Court's holding. To the contrary, considering the facts of the present case, these illustrations confirm that the Court errs in basing its holding on section 302B of the *Restatement (Second).*

The Court's misdirection in this case is troubling in two respects. First, it fails to limit the Council's duty to only those harmed by reasonably relying on the referral. At least if it explicitly adopted section 311, the Council's duty would be so limited. RESTATEMENT (SECOND) OF TORTS § 311(1) (1965). Even under the cause of action for negligent misrepresentation in the commercial context, which we have previously recognized, the duty has been limited to those who suffer loss while justifiably relying on the representation. *Federal Land-Bank Ass'n of Tyler,* 825 S.W.2d at 442. The Court establishes no such limit to its newly found duty in this case. To the contrary, it appears that once an organization negligently refers another, it will be liable for any resulting personal injuries irrespective of any party's reliance. Second, the duty established by the Court, despite its protestations to the contrary, entails an obligation to warn of another's potentially dangerous propensities. The Court acknowledges that spreading rumors about child molestation can result in the undeserved destruction of an individual's reputation, 926 S.W.2d at 291–292, but its decision

virtually mandates the dissemination of unconfirmed reports of child molestation.

\* \* \* \* \*

In my view, the Court errs in creating a common law cause of action for negligent misrepresentation in non-pecuniary loss cases. Because no such duty has existed before today and should not exist tomorrow, I would reverse the court of appeals' judgment in its entirety. I respectfully dissent.