

**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-11-00590-CV**

_____

**ELIZABETH HELBING, Appellant**

**V.**

**OLIVER ALAN HUNT AND JOHN WILLIAM DEAVER, Appellees**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-31060-A**

---

**DISSENTING OPINION**

Because I would hold that upperclassmen student counselors at a college orientation have no duty to incoming freshmen who participate in orientation to refrain from encouraging the freshmen to participate in a dangerous activity several weeks after the orientation has concluded, I respectfully dissent.

*Duty for Risk Defendants Affirmatively Created?*

Helbing contends that "[a]cting in the role of Fish Camp counselors, Hunt and Deaver pressured her to go on this outing and affirmatively undertook her care." Specifically, Helbing argues that Hunt and Deaver had a duty to her because of their "affirmative undertaking to make the excursion safe." Thus, the first issue I address is whether Hunt and Deaver, by inviting Helbing on a dangerous excursion, undertook a duty to guarantee her safety.

A cause of action for negligence has three elements: (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Praesel v. Johnson,* 967 S.W.2d 391, 394 (Tex. 1998). The threshold question, of course, is the existence of a duty. *Id.* The existence of duty is a question of law. *Joseph E. Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385, 387 (Tex. 1991). If no duty exists, our inquiry into whether negligence liability may be imposed ends. *Van Horn v. Chambers,* 970 S.W.2d 542, 544 (Tex. 1998).

Generally, there is "no duty to take action to prevent harm to others absent certain special relationships or circumstances." *Torrington Co. v. Stutzman,* 46 S.W.3d 829, 837 (Tex. 2000); *see also* RESTATEMENT (SECOND) OF TORTS § 314 (1965) ("The fact that [an] actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."). If the defendant has no duty, then he cannot be held liable

2

for negligence. *J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.,* 302 S.W.3d 515, 529 (Tex. 2009).

Even if there is no general duty, "one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby." *Colonial Sav. Ass'n v. Taylor,* 544 S.W.2d 116, 119 (Tex. 1976).

Helbing cites two cases that she claims stands for proposition that "where a party has recommended a course of action that unreasonably increases the risk of harm to a victim," that party has made such a recommendation owes the victim a duty to prevent the harm. We find both cases distinguishable.

In *Golden Spread Council, Inc. No. 562 of Boy Scouts of America v. Akins*, a local church decided to start a scout troop and asked the Golden Spread Council to recommend a scoutmaster. 926 S.W.2d 287, 292–93 (Tex. 1996). The Council recommended Estes, despite being aware of rumors that he had "messed around with" boys. *Id.* at 290. When sued by the mother of a boy molested by Estes, the Council argued that it owed no duty. *Id.* at 289. The supreme court disagreed, holding that "if [the Council] knew or should have known that Estes was peculiarly likely to molest boys, it had a duty not to recommend him as scoutmaster." *Id.* at 292. This case does not stand for the overly broad position argued by Helbing, i.e., that merely recommending a dangerous course of action gives rise to a legal duty

3

to prevent injury arising from that danger. In fact, the supreme court emphasized the narrowness of its holding by stating that "[the Council's] only duty was to exercise reasonable care, based on the information it received, in recommending scoutmasters." *Id.*

Helbing also relies on *D. Houston, Inc. v. Love*, a case in which an exotic dancer sued her employer for injuries she sustained in a car crash on her way home from work. 92 S.W.3d 450, 451 (Tex. 2002). Love alleged that her employer was responsible for her injuries because her employer encouraged her to accept drinks from patrons of the club. *Id.* at 454-55. The supreme court agreed, holding that "[w]hen an employer exercises some control over its independent contractor's decision to consume alcoholic beverages to the point of intoxication, such that alcohol consumption is required, the employer must make reasonable steps to prevent foreseeable injury to the independent contractor caused by drunk driving." *Id.* at 457. *Love*, however, does not stand for the broad proposition that encouraging one person to do something dangerous (here, drinking to excess) results in a duty by the "encourager" to prevent any injury arising from the dangerous activity. The duty in *Love* was imposed based on an employer's right, and corresponding duty, to control its independent contractor's behavior. In the present case, Hunt and Deaver had no right or responsibility to control Helbing's behavior.

4

Finally, appellant argues that "Texas cases have historically recognized a negligence claim where one 'guides another on a trip'" and cites several cases as support. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007); *Lamar v. Poncon*, 305 S.W.3d 130 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Hudson v. Cont'l Bus Sys., Inc*. 317 S.W.2d 584 (Tex. Civ. App.—Texarkana 1958, writ ref'd n.r.e.); *Bunyard v. Garza*, No. 13-98-00663-CV, 2000 WL 35729372 (Tex. App.—Corpus Christi July 20, 2000, no pet). All of these cases involved "hired" tour guides; thus the duties, if any, arose from the contractual relationship between the parties. Such is not the case here. Hunt and Deaver were not hired as Helbing's tour guides; they merely invited her to accompany them to the railroad tracks. Helbing's "tour guide" cases are inapplicable.

Instead, I find the case of *Rocha v. Faltys*, which discusses whether one college student created a dangerous situation by inviting another college student to participate in a dangerous activity, to be applicable. 69 S.W.3d 315 (Tex. App.—Austin 2002, no pet.). In that case, the plaintiff, 21-year-old Rocha, and his fraternity brother, Faltys, attended a fraternity party where Rocha drank beer. *Id.* at 318. After the party, Rocha and Faltys drove to a local swimhole at 2:45 in the morning, accompanied by several women. *Id.* Rocha and Faltys climbed to the top of a cliff overlooking the river and Faltys dove in. *Id.* Faltys then encouraged

5

Rocha to do the same. *Id.* Rocha jumped from the cliff, but, unable to swim, drowned. *Id.*

Rocha's family sued Faltys, alleging that "by taking [Rocha] to the top of the cliff and encouraging him to jump off the cliff while he was intoxicated," Faltys undertook a legal duty to prevent Rocha's death. *Id.* at 321. Specifically, the Rochas argued, as Helbing does here, that when a "party negligently creates a situation, then it becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby." *Id.* (quoting *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987); *Buchanan v. Rose*, 159 S.W.2d 109, 110 (1942)). The court disagreed, holding that

> Faltys's act of taking [Rocha] to the top of the cliffs, in and of itself, does not give rise to a legal duty. ***Simply taking [Rocha], an adult man, to the location where [Rocha] could choose to engage in an allegedly dangerous activity does not constitute negligent creation of a dangerous situation.*** The fact that [Rocha] was intoxicated does not affect this analysis. It has been long-recognized at common law that an individual who chooses to consume alcohol maintains the ultimate power over his situation and thus the obligation to control his own behavior. To impose a legal duty on Faltys because [Rocha] had consumed alcohol would be contrary to this principle.

*Id.* (internal citation omitted).

I believe the same is true in this case. Simply inviting Helbing, an adult, to a location where she could choose to participate in a dangerous activity or not does not constitute the negligent creation of a dangerous situation. And, unlike the

6

plaintiff in *Rocha*, there is no evidence in the record that Helbing's decision to participate in the dangerous activity was the result of any intoxication or loss of her mental faculties. If Faltys owed no duty to an intoxicated Rocha, Hunt and Deaver owed no duty to Helbing, who remained perfectly capable of making her own decisions.

### *Creation of New Duty?*

Nevertheless, Helbing argues that this Court should recognize a new duty under the specific facts of this case. Although Helbing does not specify the parameters of such a duty, I believe that she is arguing that peer advisor counselors at a college orientation have a duty not to invite freshmen who attend orientation to participate in any dangerous activity. Helbing does not specify when such a duty would arise or how long the counselors would be bound by such a duty.

Deciding whether to impose a new common-law duty involves complex considerations of public policy. *Graff v. Beard*, 85 S.W.2d 918, 920 (Tex. 1993). In determining whether a defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1991). Courts have also considered whether one party has superior

knowledge of the risk, and whether a right to control the actor whose conduct precipitated the harm exists. *Graff*, 85 S.W.2d at 920.

Here, the risk, foreseeability, and likelihood of injury were certainly apparent to Hunt and Deaver. However, and quite importantly, those risks were equally apparent to Helbing. All three were aware, as any reasonable adult would be, that walking on a railroad bridge at night would be an inherently dangerous activity. In fact, any activity that involves approaching a moving train would be dangerous. It is likely that the dangerousness of the activity is what made it so attractive to these young adults.

Because the risk and foreseeability of injury would be obvious to any reasonable adult, we must consider the consequences of placing the burden to prevent injury on the defendants in this case. Helbing contends that "as camp counselors occupying a position of trust and confidence, the relationship of the parties supports imposing a duty of care."

However, I do not agree that by serving as Fish Camp counselors in early August 2007, Hunt and Deaver undertook some sort of continuing duty to insure the safety of Fish Camp attendees, even after the four-day Fish Camp had ended and classes had begun for the semester. In reaching this conclusion, I look at whether Hunt and Deaver were in a position to control Helbing's conduct. The evidence shows that they were not. Helbing herself testified that the defendants

8

"didn't force [her] to go; but [she] did feel guilty for not going." Helbing testified that the defendants did not have "the power to force us what to do; but he did have power, considering we were new and freshmen." There was also testimony that Fish Camp counselors were not in a position of authority over the incoming freshmen.

While Helbing may have been "relying solely on Hunt and Deaver as camp counselors to safeguard her," such reliance was not reasonable. Helbing, as an adult, also had a duty to safeguard herself. While Hunt and Deaver may have invited her to participate in an obviously dangerous activity, there is no evidence that they "actively encouraged, urged, pressured, forced, or coerced" her into climbing on the platform. *See Rocha*, 69 S.W.2d at 322. Helbing participated in the dangerous activity of her own accord, and never asked for any details about the experience to follow or questioning its safety, even though she knew that it involved being near a moving train during the night.

I believe that focusing on Helbing's duty to control her own behavior is appropriate in light of relevant Texas Supreme Court authority. In *Graff*, the supreme court considered whether to recognize a new duty for social hosts to control the behavior of guests to whom they served alcohol. In refusing to do so, the court stated that "***given the ultimate power of guests to control their own alcohol consumption and the absence of any legal right of the host to control the***

9

*guest*, we find the arguments for shifting the legal responsibility from the guest to the host, who merely makes alcohol available at social gatherings, unconvincing." *Graff*, 858 S.W.2d at 921 (emphasis added).

Similarly, here, Helbing was in control of her own behavior, and Hunt and Deaver, despite their role as Fish Camp counselors, had no legal right to control her behavior, nor did they coerce or compel her behavior. Therefore, I would hold that Hunt and Deaver had no duty to prevent Helbing's injury under these circumstances. Absent facts not present here, one adult does not become legally responsible for another's injuries simply by inviting the injured person to participate in the dangerous activity that led to the injury. *See Rocha*, 69 S.W.3d at 322 (declining to create duty not to encourage another to jump from a cliff).

### *Duty arising from Negligent Undertaking?*

Finally, Helbing argues that Hunt and Deaver are liable under the theory of "negligent undertaking." Specifically, she argues that "Hunt and Deaver not only created the risk of injury by recommending the excursion to the bridge, they assumed a duty to make the freshmen safe, guiding them down the path, over the bridge, trying to light the trail with cellphones."

To state a claim for a negligent undertaking, the plaintiff must show: (1) the defendant undertook to perform services that he knew or should have known were necessary for the plaintiff's protection, (2) the defendant failed to exercise

10

reasonable care in performing those services, and either (3) the plaintiff relied upon the defendant's performance, or (4) the defendant's performance increased the plaintiff's risk of harm. *Pugh v. Gen'l Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 94 (Tex. App—Houston [1st Dist.] 2007, pet. denied). If one undertakes to make something safe for others, he owes a duty to use due care in making the situation safe. *Wilson v. Tex. Parks and Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex. 1999).

To establish a negligent undertaking claim, the plaintiff must nonetheless establish that the defendant violated a legal duty owed to them. *Torrington Co.*, 46 S.W.3d at 837. I believe that Hunt and Deaver did not have a legal duty to Helbing not to invite her to participate in a dangerous activity. Similarly, there is nothing in the record to support Helbing's contention that, by organizing the outing to the bridge, Hunt and Deaver voluntarily undertook a duty to make the bridge safe. Thus, I believe the defendants have negated the first element of a negligent undertaking claim, i.e., they did not undertake to perform any services for Helbing by inviting her to the bridge.

*Summary*

Because Hunt's and Deaver's motions for summary judgment conclusively negated the duty element of each of Helbing's negligence causes of action, I would affirm the judgment of the trial court.

11

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Chief Justice Sherry Radack, dissenting.