In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-08-00480-CV


____________________



HAROLD R. NEWSOM, Appellant



V.



B.B., B.C. AS NEXT FRIEND OF C.C., D.E. AS NEXT FRIEND OF E.E.,


AND F.G. AS NEXT FRIEND OF G.G., Appellees 


 




On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 07-02-01967-CV






OPINION



 Appellees B.B., C.C., E.E., and G.G., obtained a judgment against Harold R. Newsom
for negligence and negligence per se based upon Newsom's failure to warn or protect
appellees from acts of sexual assault by Newsom's adult son, Jason. (1) In nine issues, Newsom
contends Texas law recognizes no legal duty on the part of a father to warn third parties
about the sexual and assaultive history of his adult son, challenges both the availability of a
civil remedy for endangering a child and the sufficiency of the evidence supporting the jury's
finding on negligence per se, attacks the amount of damages awarded for future mental
anguish, and argues that the trial court erred by failing to disregard damage findings. We
reverse that part of the judgment that awards each appellee a judgment against Harold R.
Newsom in the amount of $400,000 plus $150,000 in prejudgment interest, and render
judgment that appellees take nothing from Harold R. Newsom on their claims for negligence
and negligence per se. We affirm the remainder of the judgment, including an award of
$2,000,000 plus $750,000 in prejudgment interest to each appellee against Jason Newsom
and an award of $181,000 to appellees for fraudulent transfer to avoid creditors, and a take
nothing judgment against Cougar Run Ranch I, Inc., Cougar Run Ranch II, Inc., and Hal
Newsom's Airboat Tours, Inc.

 The jury found that Harold Newsom's negligence was a proximate cause of the
"occurrence in question" with respect to the four plaintiffs, all of whom were adolescent or
pre-adolescent boys that Jason Newsom had sexually abused. The jury also found that the
negligence per se of Harold Newsom was a proximate cause of the occurrence in question
with respect to the four plaintiffs, the statutory violation at issue being the penal offense of
endangering a child. See Tex. Pen. Code Ann. § 22.041(c) (Vernon Supp. 2008). The jury
failed to find that the Newsoms engaged in either a joint enterprise or a joint venture and did
not reach the contingently-submitted questions regarding Jason's agency and the plaintiff's
status regarding a joint venture. The jury did find that Jason Newsom committed an assault
against and intentionally inflicted severe emotional distress on each plaintiff. The jury
apportioned responsibility 80% against Jason Newsom and 20% against Harold Newsom. 
The jury also found that there had been a fraudulent transfer of property by Jason Newsom. 
The trial court entered judgment on the jury's verdict.

 Harold Newsom ("Newsom") contends he owed no legal duty to the appellees. Duty
is a threshold issue and "liability cannot be imposed if no duty exists." The Kroger Co. v.
Elwood, 197 S.W.3d 793, 794 (Tex. 2006). The existence of a duty is a question of law for
the court. Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990). "As
a general rule, a person has no legal duty to protect another from the criminal acts of a third
person or control the conduct of another." Walker v. Harris, 924 S.W.2d 375, 377 (Tex.
1996). "In determining whether the defendant was under a duty, the court will consider
several interrelated factors, including the risk, foreseeability, and likelihood of injury
weighed against the social utility of the actor's conduct, the magnitude of the burden of
guarding against the injury, and the consequences of placing the burden on the defendant." 
Phillips, 801 S.W.2d at 525.

 The Supreme Court has recognized limited exceptions to the general rule of non-liability. Nabors Drilling, U.S.A. v. Escoto, 288 S.W.3d 401, 405 (Tex. 2009). For instance,
a person who controls a premises has a duty to protect an invitee from criminal acts of third
persons if the premises owner knows or has reason to know of an unreasonable and
foreseeable risk of harm to the invitee. Trammell Crow Cent. Tex., Ltd. v. Gutierrez, 267
S.W.3d 9, 12 (Tex. 2008). To be held liable, the person in control of the premises must have
done more than create an opportunity for another to commit a crime, unless at the time of his
negligent conduct he knew or should have known that he created the situation and that a third
person might avail himself of the opportunity to commit a crime. Nixon v. Mr. Property
Mgmt. Co., 690 S.W.2d 546, 550 (Tex. 1985)(negligence per se arising from violation of a
city ordinance).

 Additionally, the existence of a special relationship may impose a duty upon a person
to control a third party's conduct. For instance, a defendant in control of a dangerous person
may owe a duty of care to persons foreseeably exposed to danger arising from the
defendant's failure to reasonably exercise its right of control. See Texas Home Mgmt., Inc.
v. Peavy, 89 S.W.3d 30, 38-39 (Tex. 2002). The scope of the duty is commensurate with the
right of control. See id.; see also Lefmark Mgmt. Co. v. Old, 946 S.W.2d 52, 53-54 (Tex.
1997).

 Circumstances in which Texas law recognizes a duty in the absence of control or a
right of control are even more limited. A person not in control of real premises may owe a
duty if that person either created a dangerous condition or agreed to make safe a known
dangerous condition. Lefmark Mgmt. Co., 946 S.W.2d at 54. Generally, if a party enters into
an affirmative course of action, he has assumed the duty to act and must do so with
reasonable care. Otis Eng'g Corp. v. Clark, 668 S.W.2d 307, 309-10 (Tex. 1983) ("One who
voluntarily enters an affirmative course of action affecting the interests of another is regarded
as assuming a duty to act and must do so with reasonable care."). However, "[u]nder Texas
law, in the absence of a relationship between the parties giving rise to the right of control,
one person is under no legal duty to control the conduct of another, even if there exists the
practical ability to do so." Graff v. Beard, 858 S.W.2d 918, 920 (Tex. 1993).

 At the time of the assaults on the appellees, Jason Newsom was an adult. Texas courts 
do not generally impose liability on a parent for the actions of an adult child. See Villacana
v. Campbell, 929 S.W.2d 69, 75 (Tex. App.--Corpus Christi 1996, writ denied). Harold
Newsom and his son operated neighboring wildlife ranches and both men conducted
bowfishing expeditions on air boats. The jury failed to find that Jason Newsom and Harold
Newsom were engaged in either a joint enterprise or a joint venture. The appellate record
does not show that appellees challenged those findings in the trial court and those findings
have not been challenged on appeal. See Tex. R. Civ. P. 324; Tex. R. App. P. 25.1(c);
33.1(a); 38.2(b)(1).

 Appellees identify evidence that they argue supports imposing a duty on Harold 
Newsom. First, they rely on evidence of Newsom's knowledge that, approximately twenty
years earlier, then-seventeen-year old Jason Newsom had sexually assaulted his step-brothers. 
In the course of divorce proceedings in 2002, Jason Newsom's spouse accused him of
abusing her children and nephew. Although the agreed final decree provided Jason with
unsupervised visitation with the children, Newsom was present during the proceedings and
was aware that allegations of sexual misconduct by Jason Newsom had been raised. In
December 2004, an employee of Jason Newsom's animal control business told Harold 
Newsom of his concerns about the young boys spending time on Jason's property. Appellees
contend this evidence of Harold Newsom's superior knowledge of Jason Newsom's sexual
proclivities justifies imposing a duty on Newsom to ensure that the appellees were not placed
in harm's way, notwithstanding Harold Newsom's admitted lack of control over Jason
Newsom.

 Appellees rely upon Golden Spread Council, Inc. #562 of the Boy Scouts of Am. &
Boy Scouts of America v. Atkins, as authority for imposing a duty under the circumstances
present in this case. See Golden Spread Council, Inc. #562 of the Boy Scouts of Am. v. Akins,
926 S.W.2d 287, 289-90 (Tex. 1996). In Atkins, a parent sued both the national scouting
organization (BSA) and the local scouting organization (GSC) for damages suffered by a
minor who had been molested by a volunteer scoutmaster. Id. at 288-89. The Supreme Court
held the local organization had a duty but the national organization did not. Id. at 289. The
minor's allegations had been reported to the local organization before it recommended the
scoutmaster to a church that was forming the new troop. Id. at 289. In balancing the social
utility of GSC's conduct, the magnitude of the burden on GSC, and the consequences of
placing a burden on GSC, the Supreme Court noted that GSC was not obliged to investigate
the scoutmaster or risk liability for defamation, as all it had to do was to refrain from
recommending him. Id. at 291. In considering GSC's superior knowledge and its right of
control, the Supreme Court noted that although GSC did not control the everyday functions
of its chartered organizations and scoutmasters, it had affirmatively acted to recommend the
scoutmaster. Id. The court held that if GSC knew or should have known the scoutmaster
was likely to molest young boys, it had a duty not to recommend him as a scoutmaster. Id.
at 292. The court stated "GSC's only duty was to exercise reasonable care, based on the
information it received, in recommending scoutmasters." Id. In considering whether to
impose a duty on the national organization, the Supreme Court noted that it would be a
tremendous burden to place a duty on BSA to screen adult volunteers about whom it has no
knowledge and over whom it had little or no control. Id. at 290. BSA could not be held
responsible for GSC's conduct because GSC was a separate legal entity over which BSA had
no direct control. Id.

 The two defendants differed in that only the local organization took the affirmative 
action of recommending a scoutmaster that it should have known posed an increased risk of
harm to the scouts. See id. at 291. The Supreme Court expressly limited the duty imposed
to the action taken by GSC. Id. at 292. The duty imposed on the local organization
concerned a matter over which it had control, namely, its recommendation of the
scoutmaster. The evidence indicated that, without the recommendation of GSC, the child
molester would not have become the troop's scoutmaster. See id.; see also Otis Eng'g, 668
S.W.2d at 309.

 Another case relied upon by the appellees concerned a grandmother sued for
negligence after the grandfather molested a child. See Doe v. Franklin, 930 S.W.2d 921,
922-23 (Tex. App.--El Paso 1996, no writ). In that case, however, the grandmother had
undertaken the care and supervision of the child. Id. at 928-29. Once she did so, the
grandmother assumed the duty to not leave the child alone with a person she knew or should
have known had previously molested the child. Id. at 929. Thus, the duty arose from an
affirmative act of the defendant, that is, leaving the child alone with the grandfather after
having assumed caretaking responsibilities for the child. Id. In contrast, Newsom did not
engage in an affirmative act that created the unreasonable risk of harm to the appellees. 
Furthermore, the appellees concede that Harold Newsom had no control over Jason Newsom. 
The appellees seek to impose liability on Newsom because Newsom possessed superior
knowledge of the risk and likelihood of injury to the boys that Jason Newsom befriended. 
According to appellees, Newsom's fine reputation in the community made it easier for Jason
Newsom to befriend the children and gain the trust of their parents.

 The appellees argue that the social utility of Newsom's wildlife recreation business
might be high, but allowing boys to participate in the business activities Jason Newsom
jointly conducted with Newsom has no social utility. Appellees also argue that Newsom
"reaped the benefits" of combining his business with Jason Newsom. Notwithstanding such
evidence, the jury failed to find that Harold Newsom and Jason Newsom engaged in either
a joint venture or a joint enterprise. Those findings were not challenged in the trial court and
have not been challenged on appeal. Accordingly, appellees cannot rely upon jointly
conducted business activities to impose liability on Harold Newsom for Jason Newsom's
conduct and must instead show that Newsom engaged in an affirmative act that worsened the
situation. See, e.g., Golden Spread, 926 S.W.2d at 292 (recommending scoutmaster); Otis
Eng'g, 668 S.W.2d at 308-10 (sending intoxicated employee home in his vehicle). The
evidence relied upon by appellees shows only that Harold Newsom derived some benefit
from Jason Newsom's business activities; it does not show that Newsom increased the risk
to the boys through some affirmative act. Appellees argue that Newsom contributed to a
"Neverland" environment in which Jason Newsom could take advantage of the boys, but
Jason Newsom operated his own businesses, owned his own ranch, and operated his own
boat. Harold Newsom also owned a ranch and a boat, but his activities did not increase the
risk to the children.

 According to appellees, only a slight burden is placed on Harold Newsom to warn
appellees and their parents of Jason Newsom's proclivities. Appellees provide no authority
for creating a duty to warn that is separate and apart from a general duty to exercise
reasonable care to protect others from harm. Generally, a person's duty to warn of a
dangerous situation that the person did not create is a moral duty, not a legal one. See
Buchanan v. Rose, 138 Tex. 390, 159 S.W.2d 109, 110 (Tex. 1942). The Supreme Court
stated:

 a bystander may watch a blind man or a child walk over a precipice, and yet
he is not required to give warning. He may stand on the bank of a stream and
see a man drowning, and although he holds in his hand a rope that could be
used to rescue the man, yet he is not required to give assistance. He may owe
a moral duty to warn the blind man or to assist the drowning man, but being
a mere bystander, and in nowise responsible for the dangerous situation, he
owes no legal duty to render assistance.


Id.


 Superior knowledge of an unreasonable risk of harm presented by a third party may
justify imposing a duty commensurate with the defendant's control. See, e.g., Texas Home
Mgmt., 89 S.W.3d at 38-39 (duty to exercise reasonable care in exercising control over
dangerous person housed in defendant's facility). But foreseeability alone is not sufficient
to create a duty. Nabors Drilling, 288 S.W.3d at 411. In this case, Newsom had no right to
control the behavior of his adult son, and the appellees have not identified an affirmative act 
by Newsom that created an unreasonable and foreseeable risk of harm to the appellees. 
Because liability for a criminal act committed by a third party cannot be based upon 
foreseeability alone, in the absence of control or a right of control, we hold that Harold 
Newsom owed no duty to prevent injuries to the appellees resulting from sexual assaults 
committed by Newsom's adult child. We sustain issues one and two.

 In issues three and four, Newsom relies on the Supreme Court decision in Perry v.
S.N., 973 S.W.2d 301, 308-09 (Tex. 1998) in arguing that the criminal statute, Section
22.041(c), does not provide an appropriate basis for civil liability. In Perry, the Court held
a claim of negligence per se could not be "based on defendants' violation of the child abuse
reporting statute." Perry, 973 S.W.2d at 309. The Court explained in part:

 Some commentators contend that the term 'negligence per se' does not even
apply when the statute on which civil liability is based corresponds to no
common law duty. While our definition has never been so restrictive, this
Court in fact has created a new duty by applying negligence per se on only one
occasion. . . . Thus, based on both this Court's past practice and the
observations of noted scholars, we conclude that the absence of a relevant
common law duty should be considered in deciding whether to apply
negligence per se to the Family Code's reporting provision. (citations omitted).


We need not decide in this case, however, whether to apply negligence per se to the statute
here, if the evidence does not establish a violation of the statute.

 Issues three through six challenge the judgment based upon the jury's affirmative
finding of negligence per se by Harold Newsom. We therefore address Newsom's legal
sufficiency issues first. See Tex. R. App. P. 43.3.

 In reviewing the legal sufficiency of the evidence, the test is whether the evidence
"would enable reasonable and fair-minded people to reach the verdict under review." City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). We "must credit favorable evidence
if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could
not." Id. In addition, we must "consider [the] evidence in the light most favorable to the
verdict, and indulge every reasonable inference that would support it. But if the evidence
allows of only one inference, neither jurors nor the reviewing court may disregard it." Id. at
822 (footnotes omitted).

 The jury was instructed, as follows:

 You are instructed that, in order to answer this question "yes" with respect to
a Plaintiff named below, you must find that Harold R. Newsom committed a
criminally negligent act or omission that placed the Plaintiff in imminent
danger of death, bodily injury, or physical or mental impairment, and that
Harold R. Newsom's act or omission occurred at a time when the Plaintiff was
14 years of age or younger. For purposes of this paragraph, you are further
instructed as follows:


 a. "Bodily injury" means physical pain, illness, or any
impairment of physical condition.


 b. A person acts with "criminal negligence," with respect
to circumstances surrounding his conduct or the result of his
conduct when he ought to be aware of a substantial and
unjustifiable risk that the circumstances exist or the result will
occur. The risk must be of such a nature and degree that the
failure to perceive it constitutes a gross deviation from the
standard of care that an ordinary person would exercise under all
the circumstances as viewed from the actor's standpoint.


 c. "Omission" means failure to act[.]


 In issues five and six, Newsom contends the evidence is legally insufficient to support
the jury's finding that he committed a criminally negligent act or omission that placed each
appellee in imminent danger of bodily injury. A person commits an offense if, with criminal
negligence, by act or omission, he engages in conduct that places a child younger than fifteen
years in imminent danger of bodily injury. See Tex. Pen. Code Ann. § 22.041(c). Newsom
contends there is no evidence that any of the appellees were in imminent danger at the time
Newsom acted or failed to act.

 Appellees argue that the evidence that Jason Newsom committed acts of sexual assault
between September 2005 and February 2006, at a time when Newsom was aware of prior
allegations of sexual assault and after he admitted his concern to Jason Newsom's employee,
established that appellees were in imminent danger of sexual assault by Jason Newsom. 
Appellees also argue that Texas law does not require that the actual sexual abuse have
occurred while Harold Newsom was present and that it is sufficient that they were left
unsupervised with Jason Newsom. There is no evidence in the record that Harold Newsom
ever assumed any supervisory responsibility for any of the appellees. Furthermore, there is
no evidence that Newsom was present at any time when Newsom knew or should have
known that an assault would occur.

 Examples where a danger has been found to be imminent within the criminal
proscription for endangering a child include striking the child's mother while she is holding
the child, driving while intoxicated with children in the vehicle, evading arrest and driving
dangerously with children in the vehicle, and failing to provide adequate nourishment to a
child in the defendant's care. See Garcia v. State, 212 S.W.3d 877, 886 (Tex. App.--Austin
2006, no pet.) (striking person holding child); Rodriguez v. State, 137 S.W.3d 758, 761 (Tex.
App.--Houston [1st Dist.] 2004, no pet.) (driving while intoxicated with children in vehicle);
Walker v. State, 95 S.W.3d 516, 521 (Tex. App.--Fort Worth 2002, pet. ref'd) (evading arrest
and violating traffic laws with child in vehicle); Contreras v. State, 54 S.W.3d 898, 905 (Tex.
App.--Corpus Christi 2001, no pet.) (failing to provide adequate nourishment to child). On
the other hand, leaving a three-year-old child alone in a truck while the defendant ingested
methamphetamine in a restroom did not expose the child to imminent danger in a situation
where the child was upset but no harm came to him. Millslagle v. State, 81 S.W.3d 895, 898
(Tex. App.--Austin 2002, pet. ref'd). The court held the "temporal aspect of the crime" was
lacking. Id. In another case, living with a man who was on probation for indecency with a
child, without more, did not place the child in imminent danger under Section 22.041(c),
although the child was eventually sexually assaulted by the probationer. Elder v. State, 993
S.W.2d 229, 229-30 (Tex. App.--San Antonio 1999, no pet.). In a robbery case, the Court
of Criminal Appeals held that threats by the defendant "that she had almost had him killed
the day before, but she had 'cancelled' the plan when he agreed to show up with the money"
did not establish a threat of bodily injury to be inflicted immediately, as required to establish
that the victim was placed in fear of imminent bodily injury. Devine v. State, 786 S.W.2d
268, 270 (Tex. Crim. App. 1989). From these cases, we discern that to be "imminent" for
purposes of imposing responsibility pursuant to Penal Code § 22.041(c), the situation must
be immediate and actual, not potential or future, at the moment of the act or omission by the
defendant. None of the evidence that the appellees contend supports the jury's finding
concerns an occurrence in which Harold Newsom should have been aware that an assault was
imminent. Penal Code § 22.041 requires that defendant have engaged in conduct, either by
act or omission. See Tex. Pen. Code Ann. 22.041. Under the express terms of the criminal
statute, to engage in criminal conduct that by act or omission places a child in imminent
danger of bodily injury, the danger must be imminent at the moment the defendant engages
in the conduct. Even if § 22.041 establishes a standard of conduct that applies to civil cases,
a matter we expressly do not reach, the evidence in this record does not establish that Harold
Newsom violated the criminal statute. We sustain issues five and six.

 The remaining issues would not entitle Newsom to greater relief. Because the
remaining issues and arguments are not necessary to the final disposition of the appeal, we
decline to address them. See Tex. R. App. P. 47.1.

 We reverse that part of the judgment that awards B.B., C.C., E.E., and G.G. each
$400,000 in damages plus $150,000 in prejudgment interest, and render judgment that B.B.,
C.C., E.E., and G.G. take nothing from Harold R. Newsom on their claims for negligence and
negligence per se. We affirm the remainder of the judgment.

 AFFIRMED IN PART; REVERSED AND RENDERED IN PART.





 _____________________________

 STEVE McKEITHEN

 Chief Justice




Submitted on October 29, 2009

Opinion Delivered February 18, 2010


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. Due to the minority of the injured parties, B.C. acted as next friend of C.C., D.E.
acted as next friend of E.E., and F.G. acted as next friend of G.G. For convenience, we refer
to each minor through assigned initials rather than to the party appearing on his behalf.