**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00291-CV**
_____

**SHYLOA SEAMAN AND M.O.R.E. HEART & SOUL COUNSELING & CONSULTING, P.L.L.C., Appellants**

**V.**

**JENNA GAUTREAUX, Appellee**

**On Appeal from the 58th District Court**
**Jefferson County, Texas**
**Trial Cause No. 23DCCV0284**

**MEMORANDUM OPINION**

The underlying litigation arises from licensed professional counselor Shyloa Seaman's ("Seaman") disclosure of Jenna Gautreaux's ("Gautreaux") alleged confidential information to her foster children's attorney ad litem. More specifically, the disclosed information contains allegations of child abuse. In this interlocutory appeal, we are asked to decide the applicability of the Texas Citizens' Participation Act (TCPA) to multiple causes of action arising from this disclosure. *See* Tex. Civ.

Prac. & Rem. Code Ann. §§ 27.001–.011 (TCPA), 51.014(a)(12) (allowing for interlocutory appeal of denial of TCPA motion to dismiss). The trial court denied Appellants Shyloa Seaman's and M.O.R.E. Heart & Soul Counseling & Consulting, P.L.L.C.'s ("MORE") TCPA Motion to Dismiss Appellee Gautreaux's claims. *See id.* § 27.005(a). In four issues, Appellants ask whether: (1) Gautreaux's First Amended Petition filed while the TCPA Motion to Dismiss was pending asserts the same legal claims or theories based on the same essential facts; (2) Gautreaux's lawsuit was based on Appellants' right of free speech; (3) Gautreaux failed to present clear and specific evidence of a prima facie case for the essential elements of her claims; and (4) Appellants established one or more affirmative defenses. For the reasons discussed below, we affirm the trial court's denial of Appellants' TCPA Motion to Dismiss in part and reverse in part.

## I. Background

Seaman is a licensed professional counselor ("LPC") who provided services through MORE. On April 8, 2021, Gautreaux had a single counseling session with Seaman. Before the session, Gautreaux completed paperwork, which addressed patient-therapist confidentiality, and counselors' mandatory reporting of child abuse, among other things. Gautreaux provided an electronic signature on these documents. The pre-counseling paperwork also included information about how

2

clients could consent to release their confidential information in writing and instructions on how to revoke that consent, which also had to be in writing.

During Gautreaux's counseling session with Seaman, she told Seaman she was a foster mother to three children under the age of three. According to Seaman, Gautreaux sought help "because of violent urges and anxiety manifesting as anger." Gautreaux also reported to Seaman that "the violent urges resulted in her popping the children in the face when all were screaming, but later, she recanted and said she had popped the four-month-old twice." Gautreaux asked Seaman if she had to report that to authorities, and Seaman responded that as suspected child abuse, she must report it as explained in the paperwork Gautreaux signed. According to Gautreaux, Seaman did not make notes during the session but later created notes of their session.

After their counseling session, Seaman reported the suspected abuse to the Department of Family and Protective Services ("the Department") which immediately removed the children. On April 29, 2021, Seaman emailed Gautreaux and informed her the children's attorney ad litem, Brian McEachern ("McEachern"), contacted Seaman and wanted to talk about the foster children and the Department's investigation into the abuse allegations.[1] Seaman told Gautreaux that she advised McEachern she could not confirm or deny Gautreaux was a client due to

---

[1]The record refers to McEachern as the children's attorney ad litem in some places, and in others, refers to him as the guardian ad litem.

3

confidentiality, and he would need a confidentiality waiver signed by any client he wanted to discuss. Seaman sent McEachern a confidentiality waiver and advised Gautreaux that if she wanted Seaman to call him back, she could email Gautreaux the form and to let her know. On May 3, 2021, Gautreaux responded by email, requested a copy of her records, and conveyed she "will not sign a waiver at this time, but will let you know if that changes."

On May 5, 2021, at 11:46 a.m., Seaman again emailed Gautreaux to let her know that McEachern emailed Gautreaux's signed confidentiality waiver and asked whether Gautreaux had signed it with a witness. She said she wanted to confirm, since Gautreaux previously said she would not sign one but would notify Seaman if she changed her mind. Seaman then said, "If you signed it with a witness, and would like for me to release your records to Mr. McEachern, please let me know." About two hours later, Gautreaux responded, "I did sign the waiver with a witness and you are free to release my session records to Mr. McEachern." Within ten minutes, Seaman answered and thanked Gautreaux for letting her know she "signed the waiver and want me to release your confidential records." The "Consent for Release of Confidential Information" Gautreaux signed on May 4, 2021 authorized the "exchange of pertinent information" between Seaman (and MORE) and McEachern "concerning the treatment of Jenna Gautreaux." It stated the disclosure was made "as part of a pending CPS case and investigation" and specified the foster children.

4

At 6:40 p.m. on May 6, Gautreaux again emailed Seaman and stated she was uncomfortable with Seaman speaking with McEachern and "understood the waiver to release documents only. Please do not talk about my session without getting my express permission first." Later that night, Seaman responded,

Thank you for informing me you do not want me to communicate with Mr. McEachern any further and I will respect your request. However, I want to clarify the release for release of confidential information you signed does allow me to speak to Mr. McEachern. I informed you he wanted to speak to me the same day I received his voicemail. In the original email to you in reference to this attorney contacting me on Thu, Apr 29, 2021 at 5:09 PM, I stated "An attorney, Mr. Bryan McEachern left a voice-mail inquiring about you today. He stated he is assigned to a case involving you and wants to speak with me. I told him I can not confirm or deny that you were or were not a client due to confidentiality. I informed him that I would need a confidentiality waiver signed by ANY possible clients he is inquiring about in the future before I can talk to him. I sent him a confidentiality waiver so that he has one. If you want me to call him back, I can email you the waiver also. Just let me know either way." The reason for this email was to notify you he wanted to speak to me as he stated on the voicemail. He did not request your records on the voicemail. I did not know you wanted your records released to Mr. McEachern until you informed me on the phone yesterday. I asked you to follow up with your request to send Mr. McEachern your records in an email to me, which I did receive yesterday as well.

I also verbalized the nature of the voicemail from Mr. McEachern to you on the phone yesterday and read you the text messages between him and I which indicated he wanted to speak to me during our phone conversation. As you were leaving my office today, I informed you that since I have the consent for release of confidential information signed and your records provided to him and yourself I would call Mr. McEachern back while I had time during my lunch break. The consent for release of confidential information you signed also states that you "authorize the exchange of pertinent information" and "I understand that no disclosure of information or records can be made without my

5

written consent unless otherwise provided for in state and federal regulations." Please let me know if I can be of further assistance in this matter.

This exchange reveals, and the parties agree, that Gautreaux visited Seaman's office on May 6 during lunch to retrieve her records.

The parties dispute, however, what took place during that visit. Gautreaux claims when she arrived, Seaman was scanning her records to send them to McEachern but had not yet sent them. Gautreaux claims she learned for the first time that not only was Seaman planning to send the records to McEachern, she also planned to speak with him about Gautreaux. Gautreaux asserted that upon learning this, she told Seaman she did not want Seaman to speak with McEachern and orally revoked her consent to send records. Gautreaux claims that despite acknowledging the revocation, Seaman told her she would send the records to McEachern regardless and intended to speak to him by phone, and Gautreaux reiterated she did not want Seaman to speak with McEachern or consent to that conversation, but Seaman insisted.

Seaman recalled the events differently. Seaman explained that on May 6, Gautreaux came to her office to get a copy of her records, and Seaman "faxed the records to Mr. McEachern, as requested by Ms. Gautreaux." In her Affidavit supporting the TCPA Motion to Dismiss, Seaman also states,

> I verbalized to Ms. Gautreaux that I was going to call Mr. McEachern since she and Mr. McEachern both had received her records, and she

6

had signed the consent to release confidential information to Mr. McEachern. She did not tell me she did not want me to talk to Mr. McEachern at that time. On May 6, 2021, at 1:06 p.m., I called Mr. McEachern and spoke to him about the suspected child abuse report I filed with CPS. Several hours later, at 6:40 p.m., I received an email from Ms. Gautreaux stating she was not comfortable with me talking to Mr. McEachern.

## Original Petition

On April 25, 2023, Gautreaux sued Seaman, MORE, and an unrelated defendant, McEachern. In her Original Petition, Gautreaux pleads Gautreaux received mental and emotional health counseling services from Seaman during one visit that occurred on April 8, 2021. Gautreaux alleges that communications that occurred during this relationship meant that Seaman and MORE owed her a duty of confidentiality under the psychotherapist-patient privilege. Gautreaux alleges that Seaman did not make contemporaneous notes during their visit but later created notes and "that Defendant Seaman altered the records to reflect things that did not occur to protect her stated position (which was, itself, without foundation)." Gautreaux also pleads that "Seaman claimed Ms. Gautreaux disclosed details of child abuse, and subsequently reported the claimed admission to the [Department], which resulted in the immediate removal of three foster children then in Ms. Gautreaux's care."

Gautreaux claims that about a week after the children were removed, she spoke with McEachern, the attorney ad litem for the children. Gautreaux alleges

McEachern recommended that she release her records of the visit with Seaman to him, and if she did, he would be the only one to see them. Gautreaux claims that based on McEachern's representations, and knowing accurate records of her visit with Seaman should not be problematic, on May 5, 2021, she signed a release allowing Seaman to provide the records to McEachern.

Gautreaux pleadings assert she visited Seaman's office on May 6, and when she arrived, Seaman was scanning her medical records but had not sent them to McEachern. Gautreaux alleges that she informed Seaman "she completely revoked any consent to sharing her records with Defendant McEachern or anyone else." Gautreaux asserts that despite Seaman acknowledging her clear revocation, Seaman said she would be sending the records to McEachern and calling him to speak to him anyway although Gautreaux "adamantly stated that she did not want Defendant Seaman to speak to Defendant McEachern and did not consent to such a conversation." Gautreaux also alleges that later on May 6, she emailed Seaman "reiterating her refusal of consent to breaching any duty of confidentiality with Defendant McEachern[,]" but Seaman admittedly "ignored oral and written rescission of any consent and adamant protestations not to share information or documents with Defendant McEachern by actually providing all the records to him and talking to him at length about private and confidential matters she learned from her counseling session with Ms. Gautreaux." Gautreaux alleges that Seaman and

8

McEachern used "private and confidential information against Ms. Gautreaux contrary to her rights, her declared position, and her interests."

Gautreaux pleadings assert a negligence cause of action against Seaman and plead vicarious liability and respondeat superior for MORE. She claims that Seaman breached several duties, including: (1) the duty to follow ethical rules about confidential matters and psychotherapist-patient privilege; (2) the standard of care by failing to protect confidentiality and denied Gautreaux the right to withdraw her consent to release information; and (3) Seaman "mishandled information and misrepresented facts" to her client's detriment. Gautreaux allege these breaches by Seaman were negligent.

**Seaman and MORE's Answer**

Seaman and MORE filed an answer to Gautreaux's Original Petition asserting a general denial. They also raise the affirmative defenses of: (1) statute of limitations; (2) immunity under the Texas Family Code section 261.106 for good faith report of alleged child abuse or neglect; and (3) immunity under the Texas Health and Safety Code section 611.007(c) for disclosure made in good faith reliance on an authorization since they "did not have notice of revocation of the consent."

**TCPA Motion to Dismiss**

On June 26, 2023, Seaman and MORE filed their TCPA Motion to Dismiss supported by evidence, including Seaman's affidavit, records, and emails. Seaman

and MORE assert that Gautreaux's lawsuit involves "a health care liability claim based on and in response to the exercise of the right of free speech[,]" and "[t]he speech at issue concerns child abuse–specifically, abuse of foster children, which is a matter of public concern." They also assert that even if Gautreaux had clear and specific evidence of a prima facie cause of action against them, suit should still be dismissed based on: (1) immunity provided to people who report allegations of child abuse; (2) statute of limitations; and (3) good faith reliance on an authorization to release protected health information. Seaman and MORE contend the TCPA applies, since "[a] person clearly exercises the right to freedom of speech when they report concerns about child abuse, because this topic is a matter of concern to the public." They reason that the legislature had a strong public policy to protect children from abuse and that as an LPC, Seaman was statutorily required to report suspected abuse.

Seaman and MORE argue that even if Gautreaux established a prima facie case, the trial court should dismiss her lawsuit based on their affirmative defenses. Defendants first argue they are immune from civil liability for reporting child abuse under Texas Family Code section 261.106, which involves a "reasonable person standard" acting in good faith and a strong public interest in protecting children from physical and sexual abuse. Defendants argue that "Seaman acted in good faith in reporting suspected child abuse to the Department and to the ad litem for the foster children in Mrs. Gautreaux's care to assist in the CPS investigation regarding the

10

foster children." Defendants contend they informed Gautreaux of the limits of their confidentiality, which included reporting child abuse. Defendants explain that Gautreaux saw Seaman for counseling and disclosed "being the foster parent to three young children and admitted she would 'pop' kids in the face when they were all screaming, although later in the session she stated she only 'popped' a four-month-old baby in the face." When Gautreaux asked Seaman if she had to report that, Seaman said she had to report it and that she "subjectively had concerns for abuse under the circumstances, and it was reasonable for her to report her concerns."

Defendants argue that even if Seaman's concerns were "misplaced," she is still entitled to immunity under Texas Family Code section 261.101(a). They also assert that the one-year statute of limitations for slander and libel bars Gautreaux's claim "if the gravamen of the tort is alleged injury to personal reputation[,]" and the cause of action accrued when the statement was published. They also argue there is a two-year statute of limitations on health care liability claims, which they contend applies to Plaintiff's claim for personal injury resulting from medical malpractice.

Finally, Appellants argue that the claims based on Seaman's disclosure to McEachern were barred, because Seaman did not have written notice of revocation of Gautreaux's consent. They provide a copy of Seaman's notice requiring any revocation of consent to disclose to be in writing, which Gautreaux received and relied on Texas Health and Safety Code section 611.007. Appellants argue Seaman

11

received Gautreaux's signed waiver of confidentiality on May 5, 2021, which Gautreaux acknowledged she signed in an email. Seaman denies that Gautreaux "verbally" revoked consent in person on May 6, 2021, before Seaman disclosed information to McEachern. Instead, Defendants argue that Gautreaux stated she did not want information released to McEachern via email on May 6, 2021, at 6:40 p.m., after Seaman already made a good faith disclosure earlier in the day.

Appellants support their TCPA Motion to Dismiss with Seaman's affidavit and records, including intake paperwork addressing the limits of confidentiality that Gautreaux completed. Seaman asserts that Gautreaux said she was a foster parent to three children under the age of three, and Gautreaux sought help "because of violent urges and anxiety manifesting as anger." Seaman also states that Gautreaux told her "the violent urges resulted in her popping the children in the face when all were screaming, but later, she recanted and said she popped the four-month-old twice." Gautreaux then immediately asked if Seaman had to report that, and Seaman said she did "as indicated in the intake paperwork Ms. Gautreaux had signed." Seaman then asserts she called the child protective hotline and reported the suspected child abuse, and she believed "in good faith" the report was necessary based on the information she had, including knowledge of the violent urges and popping a four-month-old in the face. In her affidavit, Seaman also outlines: (1) the timing and circumstances of Gautreaux signing the release authorizing disclosure to McEachern

12

for a pending CPS case and investigation involving the minor children; (2) Seaman releasing the records and speaking to McEachern; and (3) Gautreaux revoking her consent.

The records attached to Seaman's Affidavit also include a HIPAA privacy notice signed by Gautreaux, which require the revocation of consent to disclose to be in writing, emails with Gautreaux's signed "Consent for Release of Confidential Information," additional emails between Seaman and Gautreaux regarding Gautreaux revoking consent, and emails between Seaman and Gautreaux discussing McEachern requesting information from Seaman. Appellants scheduled the hearing on the Motion to Dismiss for August 16, 2023.

**First Amended Petition**

On July 28, 2023, after Seaman and MORE filed their TCPA Motion to Dismiss but nineteen days before the scheduled hearing, Gautreaux filed her First Amended Petition. Gautreaux alleges that the facts and issues "relate back to substantially the same facts and issues as set forth in Plaintiff's Original Petition[,]" but the First Amended Petition adds new factual allegations. The description of the events and circumstances surrounding the visit and disclosure remain the same. She alleges that Defendants "tricked" her "into signing defective releases for information (ostensibly and solely for a family code case) concerning her counseling session with Defendants Seaman and MORE." Gautreaux further claims that despite her "clear

13

revocation of any defective release," the Defendants "conspired to publish" her "confidential and private information" and accomplished this when they "tricked" her into signing the release then "lied" about what they would do with the information.

She also newly alleges that the release was "legally defective" and "lacked the requisite detail under Tex. Health & Safety Code section 241.152(b), HIPAA, the Texas Rules of Evidence, other rules, laws, and regulations." Gautreaux asserts the release failed to specify categories of information, and she believes it was limited to records and specified "pertinent information" would be released, which she believes only included the records.

Along with the negligence cause of action, where she claimed Seaman breached the same duties as in the Original Petition, Gautreaux adds the following causes of action against Seaman and MORE in the First Amended Petition: (1) breach of fiduciary duty; (2) negligent misrepresentation; (3) medical malpractice; (4) fraudulent misrepresentation; (5) fraud by nondisclosure; and (6) breach of contract.

**Gautreaux's Response to TCPA Motion to Dismiss**

Gautreaux filed a "Response to Defendants Seaman and M.O.R.E. Heart & Soul Counseling & Consulting, P.L.L.C.'s Motion to Dismiss Pursuant to TCPA." In her Response, Gautreaux argues that Defendants failed to meet their burden of

14

showing that her claims are based on or in response to protected activity. Gautreaux clarifies that her claims were unrelated to Seaman's disclosure to the Department, rather they were based on the disclosure to McEachern, and Defendants did not distinguish between the two "or explain why Plaintiff's legal action was based on, or in response to either." Gautreaux also asserts that the TCPA does not apply to fraud claims, which included her fraudulent misrepresentation and fraud by nondisclosure claims.

She also argues that Defendants' TCPA Motion to Dismiss cannot apply to the claims she added in the First Amended Petition, as they have addressed no cause of action in the First Amended Petition. For example, "many of Plaintiff's causes of action are primarily based not on Defendants' disclosure to Defendant McEachern, but on Defendants' misrepresentations to Plaintiff regarding the scope of the release and other factors, none of which are addressed by Defendants." Gautreaux further asserted that where a defendant's Motion to Dismiss fails to address claims brought in a subsequent amended petition, it is proper to deny the motion to the extent it does not adequately address claims in the amended petition. She responded that Defendants must segregate allegations that fall within the TCPA from those that do not, and if they do not, the trial court should deny the Motion to Dismiss. Gautreaux argues that none of her claims are based solely on disclosures to McEachern; more than disclosing patient information, the claims also involved false records,

15

misrepresenting the release's scope, and providing a defective release for her to sign, among other things.

As to Defendants' affirmative defenses, Gautreaux contends that the one-year statute of limitations for slander and libel did not bar her lawsuit, because the action was primarily based on Defendants' "failure to abide by their ethical and professional obligations, which resulted in tangible and intangible harm" to her. She also argues that the two-year statute of limitations for medical malpractice claims does not bar her claims, since the cause of action accrued on May 6, 2021, when Seaman improperly disclosed the information, and she filed her Original Petition on April 25, 2023, within the two-year statute of limitations. Finally Gautreaux asserts that Defendant Seaman's immunity defenses do not apply because: (1) Seaman cannot claim immunity based on good faith reliance on Gautreaux's consent, and regardless only three causes of action rely on disclosure to McEachern, including breach of fiduciary duty, medical malpractice, and breach of contract; and (2) Seaman cannot claim immunity based on a report of child abuse under Texas Health and Safety Code section 261.106(a) since the disclosures exceeded what was essential to report suspected abuse to someone outside the Department.

Gautreaux includes the following evidence to support her Response to Defendants' TCPA Motion to Dismiss: Affidavit of Jessica Eiseman, LPC, offering an expert opinion about the professional duties, rules, and ethical obligations

16

governing an LPC's conduct relating to patient privacy; Gautreaux's Supporting Affidavit outlining the events, timeline, and Seaman's disclosure to McEachern; MORE counseling records produced by Seaman, including the HIPAA release; emails between Gautreaux and Seaman and McEachern regarding the waiver to release "session records" to McEachern; Seaman's chart notes dated May 5, 2021 at 12:57 p.m. and 1:47 p.m.; "Consent for Release of Confidential Information" signed by Gautreaux and completed on May 4, 2021, releasing records to McEachern for "part of a pending CPS case and investigation involving [foster children];" emails between McEachern and the Department about the investigation; and Motion for Intervention Hearing Transcript involving Gautreaux's foster children dated May 14, 2021.

**Reply in Support of Motion to Dismiss Pursuant to TCPA**

Seaman and MORE filed a Reply in Support of Motion to Dismiss Pursuant to TCPA. They argue that the factual allegations in Gautreaux's First Amended Petition are the same as in the Original Petition but acknowledge that Gautreaux added new causes of action. Defendants argue, "[t]o the extent Plaintiff does assert new claims in her Amended Petition, Defendant reserves the right to file a new TCPA Motion to Dismiss within the 60-day period from the filing of Plaintiff's Amended Petition; however, Defendant believes the TCPA remains implicated by the communication underlying Plaintiff's current claims." They note that all

Gautreaux's claims against Seaman and MORE are based on Seaman's communications with McEachern and that disclosing the records constituted a "communication" as defined by the TCPA. They assert that even if Gautreaux orally revoked consent, which Seaman denied, the TCPA was still implicated "because the safety of foster children is a matter of public concern." They re-urge their immunity defenses based on Texas Health and Safety Code section 611.004 and Texas Family code section 261.106. They also contend that Gautreaux failed to provide clear and specific evidence of the essential elements of any claim and that her evidence was not "clear and specific." Finally, they object to certain statements in Gautreaux's affidavit, but the record does not show they ever obtained rulings on these objections.

The trial court denied Seaman's and MORE's Motion to Dismiss, and this interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.008(b), 51.014(a)(12).

## II. Standard of Review

We review a trial court's denial of a TCPA motion to dismiss de novo. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018); *Walker v. Hartman*, 516 S.W.3d 71, 79–80 (Tex. App.—Beaumont 2017, pet. denied). We consider the pleadings, evidence we could consider under Rule 166a, and affidavits stating facts on which liability or any defense is based in the light most favorable to

18

the nonmovant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *In re Lipsky*, 460 S.W.3d 579, 587 (Tex. 2015) (orig. proceeding); *see also Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019) (citation omitted). We also review de novo whether the parties met their burdens of proof under section 27.005 of the TCPA. *See Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021) (citation omitted); *Hall*, 579 S.W.3d at 377.

## III. Analysis

### A. TCPA Framework

The TCPA is meant "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002. The TCPA instructs courts to liberally construe it to ensure its stated purpose and intent are fully effectuated, but it "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions." *See id.* § 27.011(a), (b); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (citation omitted) (noting directive to liberally construe). Under the TCPA, a party may move to dismiss a "legal action" that is "based on or is in response to a party's exercise of the right of free speech, right to petition, or right of

association[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a); *see also Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 131 (Tex. 2019). The TCPA defines the "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3); *see Montano v. Cronan*, No. 09-20-00232-CV, 2021 WL 2963801, at *4 (Tex. App.—Beaumont July 15, 2021, no pet.) (mem. op.).

The TCPA "provides a three-step process for the dismissal of a 'legal action' to which it applies." *Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021) (citing *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 691 (Tex. 2018)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)–(d). First, the movant bears the initial burden to show that the "legal action is based on or is in response to[ ]" the movant's exercise of: "(A) the right of free speech; (B) the right to petition; or (C) the right of association[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1)(A)–(C). If the movant establishes that the nonmovant's claim implicates one of these rights, the burden shifts to the nonmovant to "'establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *Lipsky*, 460 S.W.3d at 587 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)). A "prima facie case" means "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id*. at 590 (citation omitted). It is the "'minimum quantum of evidence necessary to support a rational

20

inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.,* 136 S.W.3d 218, 223 (Tex. 2004)). Clear and specific evidence means that the "plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 591. Finally, if the nonmovant establishes their prima facie case, the burden shifts back to the movant to establish each essential element of an affirmative defense by a preponderance of the evidence. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *Youngkin v. Hines*, 546 S.W.3d 675, 679–80 (Tex. 2018); *Coleman*, 512 S.W.3d at 899.

**B. Does the Appellee's First Amended Petition, filed while Appellants' TCPA Motion to Dismiss was pending, assert the same legal claims based on the same essential facts?**

In their first issue, Appellants ask whether Gautreaux's First Amended Petition filed while their TCPA Motion to Dismiss was pending asserted the same legal claims or theories based on the same essential facts as those from the Original Petition. Gautreaux responds that Appellants' Motion to Dismiss failed to address any new claims raised in her First Amended Petition.

"[W]hen an amended or supplemental pleading includes new essential factual allegations, it asserts a new legal action that triggers a new sixty-day period for filing a motion to dismiss claims based on those new allegations." *Montelongo*, 622 S.W.3d at 301. Likewise, "an amended or supplemental pleading that asserts a new claim involving different elements than a previously asserted claim also asserts a

21

new legal action that triggers a new sixty-day period for filing a motion to dismiss that new claim." *Id.* Even so, "a new claim that does not involve different elements, however, or that is merely a 'subset' of previously filed claims, does not assert a new legal action." *Id.* (citations omitted).

Here, Gautreaux's Original Petition included a single "negligence" cause of action and specifically alleged that Seaman violated various professional duties as an LPC by disclosing certain confidential information. The elements of a negligence claim are (1) a legal duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *See Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022). Gautreaux complained that as a healthcare provider, Seaman "agreed to follow all ethical rules concerning confidential matters and the psychotherapist-patient privilege[,]" and "accepted the duty to act in her client's best interest rather than her own." Further, she complained that Seaman breached the standard of care by: (1) failing to protect patient confidentiality and denying Gautreaux the right to withdraw her consent; and (2) mishandling information and misrepresenting facts to her client's detriment. Gautreaux asserted that Seaman's breaches were the proximate cause of her injuries.

Gautreaux's First Amended Petition asserted multiple causes of action against Appellants, including breach of fiduciary duty, negligent misrepresentation, medical malpractice, fraudulent misrepresentation, fraud by nondisclosure, and breach of

contract. To prevail on a breach of fiduciary duty claim, a plaintiff must prove (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017); *Webb v. Crawley*, 590 S.W.3d 570, 586–87 (Tex. App.—Beaumont 2019, no pet.). The requisite elements of a negligent misrepresentation claim include (1) a representation made by a defendant in the course of his business or in a transaction in which he has a pecuniary interest, (2) the defendant supplies "false information" for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653–54 (Tex. 2018) (citation omitted). To prevail on a medical malpractice claim, "a plaintiff must establish the elements of negligence[,]" which include the existence of a legal duty, breach of the duty, and damages proximately caused by the breach. *Windrum v. Kareh*, 581 S.W.3d 761, 768 (Tex. 2019) (citations omitted). A species of common-law fraud, fraudulent misrepresentation or fraudulent inducement, requires that a plaintiff prove (1) a material misrepresentation, (2) that was knowingly false or asserted without knowledge of its truth, (3) made with the intention that the other party act on it, (4) which the other party relied on, and (5) which caused injury. *Anderson v. Durant*, 550 S.W.3d 605,

23

614 (Tex. 2018). "Because fraudulent inducement arises only in the context of a contract, the existence of a contract is an essential part of its proof." *Id.* (citation omitted). Fraud by nondisclosure, another subcategory of fraud, happens when a party has a duty to disclose information and fails to disclose it. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019). To prevail on a fraud by nondisclosure claim, a plaintiff must show (1) the defendant deliberately failed to disclose material facts, (2) the defendant had a duty to disclose those facts to plaintiff, (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them, (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure, and (5) the plaintiff relied on the nondisclosure, resulting in injury. *Id.* at 219–220. Finally, elements of a breach of contract cause of action are: "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (citations omitted).

Appellants argue that even though Gautreaux added new causes of action in her First Amended Petition, they were based on the same underlying facts and communications as the Original Petition. Still, in *Montelongo v. Abrea*, the Supreme

24

Court of Texas addressed whether an amended petition asserting a new claim "based on the same essential factual allegations" in the prior petition asserts a new "legal action" such that a new sixty-day TCPA dismissal deadline is triggered as to the new claims. *See* 622 S.W.3d at 299. The Court held that even if based on the same essential factual allegations, "an amended or supplemental pleading that asserts a new claim involving different elements than a previously asserted claim also asserts a new legal action that triggers a new sixty-day period for filing a motion to dismiss that new claim." *See id.* at 301.

As outlined above, except Gautreaux's medical malpractice claim, the causes of action added in her First Amended Petition included different requisite elements than the negligence claim in her Original Petition, the claim challenged in Appellants' TCPA Motion to Dismiss. *See id.* The medical malpractice claim consisted of the same requisite elements and factual allegations as her prior negligence claim such that it did not trigger a new dismissal deadline. *See Windrum*, 581 S.W.3d at 768. Since the other causes of action, including breach of fiduciary duty, negligent misrepresentation, fraudulent misrepresentation, fraud by nondisclosure, and breach of contract consisted of different elements, the First Amended Petition constituted a new "legal action" and triggered a new deadline for Appellants to file a TCPA motion to dismiss those new claims. *See Montelongo*, 622 S.W.3d at 301. In Seaman's and MORE's Reply in Support of Motion to Dismiss,

25

they argued that to the extent Gautreaux asserted new claims in the First Amended Petition, they reserved the right to file a new TCPA Motion to Dismiss within sixty days from the filing of Gautreaux's First Amended Petition. The record before us does not show that the Appellants filed a new or amended TCPA motion to dismiss the new claims. We sustain Appellants' first issue as it relates to the negligence and medical malpractice claim against Seaman but overrule it as to the other causes of action asserted in Gautreaux's First Amended Petition.

## C. TCPA Applicability

In their second issue, Appellants ask whether Gautreaux's lawsuit is based on the exercise of Seaman's right of free speech. As we have already determined, when Gautreaux asserted new claims that had different essential elements, her First Amended Petition constituted a "new legal action" as to those claims. Appellants' TCPA Motion to Dismiss did not address those new claims. In determining whether Appellants met their burden to demonstrate that Gautreaux's medical malpractice claim was based on Seaman's exercise of right of free speech, we consider the pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and any supporting and opposing affidavits. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). "We decide the applicability of the TCPA based on 'a holistic review' of the pleadings and supporting and opposing affidavits." *Montano*, 2021 WL 2963801, at *4 (citing *Adams*, 547 S.W.3d at 897).

26

The TCPA defines the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). The TCPA further defines "matter of public concern" as:

> . . . a statement or activity regarding:
> (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;
> (B) a matter of political, social, or other interest to the community; or
> (C) a subject of concern to the public.

*Id.* § 27.001(7). "The phrase 'matter of public concern' commonly refers to matters 'of political, social, or other concern to the community,' and a subject of general interest and of value and concern to the public, as opposed to purely private matters." *Montano*, 2021 WL 2963801, at \*4; *see also Creative Oil*, 591 S.W.3d at 135 (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)). The statute defines "communication" as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1).

The record before us shows that the complained-of communications from Seaman to McEachern included information about potential child abuse by Gautreaux regarding foster children in her care, specifically "a pending CPS case and investigation involving [C.L.] and [S.L.]" Plaintiff alleges that "Seaman claimed Ms. Gautreaux disclosed details of child abuse," which she subsequently reported to

27

the Department. Gautreaux also pleaded that McEachern reached out to her and Seaman about the alleged abuse. Her pleading reveals that Gautreaux's primary complaint was that Seaman spoke with McEachern and released certain records. The record contains Gautreaux's signed "Consent for Release of Confidential Information," which specified the disclosure was for the pending CPS case and investigation. Appellants argue there is a strong public policy to protect children from abuse.

The Supreme Court of Texas has recognized "the public's strong interest in helping to eradicate child abuse" and explained that "[t]he public has a strong interest in protecting children, especially . . . against physical and sexual abuse." *Bird v. W.C.W.*, 868 S.W.2d 767, 772 (Tex. 1994); *see Golden Spread Council, Inc. No. 462 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 292 (Tex. 1996) ("The public has a strong interest in protecting children from abuse[.]"). "The public policy of this state is to: ... provide a safe, stable, and nonviolent environment for the child...." Tex. Fam. Code Ann. § 153.001(a)(2); *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). Given this recognized public interest in protecting children from abuse, we agree that an allegation of possible child abuse by a foster parent is a "subject of concern to the public[,]" and thus constitutes "a matter of public concern." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)(C). Other courts have determined that communications about a child's possible abuse constituted matters of public

concern. *See Children's Lighthouse, Spring v. Davison*, No. 13-22-00452-CV, 2023 WL 4357261, at *3–4 (Tex. App.—Corpus Christi-Edinburg July 6, 2023, no pet.) (mem. op.) (concluding claim was based on "a subject of concern to the public" where mother alleged abuse by daycare facility); *de la Torre v. de la Torre*, 613 S.W.3d 307, 312 (Tex. App.—Austin 2020, no pet.) (concluding under prior version of TCPA that statements involving "the welfare of a child and allegations of child abuse" are matters of public concern); *Cunningham v. Waymire*, 612 S.W.3d 47, 58 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (same under prior version of TCPA where grandfather defendant made statements about potential abuse of his grandson); *Backes v. Misko*, 486 S.W.3d 7, 18 (Tex. App.—Dallas 2015, pet. denied) (same under prior version of TCPA where defendant's statement "indicated a child was suffering abuse from a parent.").

Based on this record, we conclude that Appellants met their burden to demonstrate the legal action brought by Gautreaux for her negligence and medical malpractice claim "is based on or is in response to" Seaman's "exercise" of her "right of free speech." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1)(A). Thus, the TCPA applies to this legal action. *See id.* We sustain issue two as it relates to her negligence and medical malpractice claim. Since Appellants' TCPA Motion to Dismiss did not address Gautreaux's other causes of action asserted in the First Amended Petition, we conclude Appellants failed to meet their burden of showing

29

that the TCPA applies to Gautreaux's breach of fiduciary duty, negligent misrepresentation, fraudulent misrepresentation, fraud by nondisclosure, and breach of contract claims. Accordingly, the burden never shifted to Gautreaux to present a prima facie case for the essential elements of her breach of fiduciary duty, negligent misrepresentation, fraudulent misrepresentation, fraud by nondisclosure, and breach of contract claims. We overrule this issue as it pertains to those additional claims.

## C. Prima Facie Case

In issue three, Appellants contend Gautreaux failed to present clear and specific evidence of a prima facie case for the essential elements of her claims. Having concluded that the TCPA applies to Gautreaux's negligence and medical malpractice claim against Appellants, we now turn to whether Gautreaux met her burden to establish a prima facie case for the essential elements of that cause of action by clear and specific evidence. *See Lipsky*, 460 S.W.3d at 587; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). We consider the pleadings, any evidence we could consider under Rule 166a, and affidavits in the light most favorable to the nonmovant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *Lipsky*, 460 S.W.3d at 587; *Push Start Indus., LLC v. Hous. Gulf Energy Corp.*, No. 09-19-00290-CV, 2020 WL 7041567, at *3 (Tex. App.—Beaumont Nov. 30, 2020, no pet.) (mem. op.) (citations omitted).

30

Appellants contend that Gautreaux's evidence is not clear and specific "and is rife with conclusory statements—especially with regard to damages[.]" They argue that Gautreaux did not present evidence that Seaman breached the applicable standard of care for an LPC, among other things. They assert the LPC expert affidavit failed to (1) mention Seaman or MORE, (2) conclude Seaman's conduct breached an applicable standard, or (3) opine that Gautreaux sustained damages proximately caused by the breach.

As explained above, a medical malpractice claim is a negligence claim. *See Windrum*, 581 S.W.3d at 768. To prevail on a medical malpractice claim, "a plaintiff must establish the elements of negligence[,]" which include the (1) existence of a legal duty, (2) breach of the duty or standard of care, and (3) damages proximately caused by the breach. *See id.* (citations omitted). Since Appellants showed the TCPA applied to Gautreaux's medical malpractice claim, Gautreaux needed to establish "by clear and specific evidence a prima facie case for each essential element" of her medical malpractice claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

Gautreaux's First Amended Petition alleged that Seaman "is a health care provider who accepted a duty to act as a reasonably prudent healthcare provider[,]" "agreed to follow all ethical rules concerning confidential matters and the psychotherapist-patient privilege[,]" and "accepted the duty to act in her client's best interest rather than her own." Gautreaux alleged that Seaman "committed an

31

unauthorized disclosure" of her medical information after she revoked consent, "transmitted false, misleading, and/or inaccurate records" to McEachern, and "used private and confidential information against" her contrary to her rights. She also alleged that the "various breaches of duties . . . caused her a series of tangible and intangible injuries." Gautreaux pleaded that Seaman and MORE "deviated from the appropriate standard of care by submitting false records" of her counseling session, misleading her about what information would be sent to McEachern under the release she signed, and "by engaging in the unauthorized release" of her "confidential information." She also claimed Seaman and MORE's actions proximately caused her injury, and to reasonable medical probability, she would not have suffered harm but for their professional negligence.

Finally, Gautreaux pleaded she was entitled to damages based on an amount to be proven at trial. Gautreaux did not specify in her petition how she was damaged by Appellants. The evidence and pleadings revealed that on April 8, 2021, Seaman reported the suspected abuse to the Department, and the Department immediately removed the three foster children.

Seaman stated in her affidavit that after Gautreaux disclosed popping the children during their counseling session, on April 8, 2021, she reported that suspected child abuse to the Department. Seaman also asserted that on May 5, 2021, she received a Consent for Release of Confidential Information signed by Gautreaux

32

to disclose information to McEachern "for a pending CPS case and investigation involving minor children." Seaman stated that on May 6, 2021, Gautreaux came to the office to retrieve her records, but she denied that Gautreaux ever orally revoked her consent or told Seaman she did not want her to speak to McEachern. Seaman asserted she sent the records to McEachern, and she spoke to him that afternoon at 1:06 p.m. about the suspected child abuse report she made to CPS. She did not receive an email from Gautreaux until 6:40 p.m. instructing her not to speak with McEachern. The record includes a corresponding email attached as evidence to Appellants' TCPA Motion to Dismiss.

Gautreaux's Response included the affidavit of LPC Jessica Eiseman, who outlined the professional rules and ethical duties of counselors. She claimed that LPCs "are required to respect their clients' privacy and protect their confidential information." Eiseman asserted that an LPC is only allowed to report suspected child abuse to the Department, and any disclosure to anyone else would require a written release of information that must meet certain legal requirements. Eiseman also claimed that if the form is intended to permit the LPC to speak to someone about a patient rather than just transmit documents, the form's language should reflect that. Eiseman stated that it "is unethical for an LPC to represent to a patient that they will disclose only the patient's records, and then verbally discuss the patient's confidential therapy session." According to Eiseman, if the LPC knows the patient

33

mistakenly thinks they are only authorizing disclosure of records, the LPC has a duty to correct the misunderstanding. Eiseman also stated that if a client orally revoked a release, the therapist should obey the client's wishes and ask for a written revocation; even absent written revocation, the therapist should not release information after being told orally the patient revoked the release.

In her affidavit, Gautreaux confirmed she entered into a counseling relationship with Seaman and asserted that Seaman's actions "resulted in tangible and intangible harm" and she "suffered pecuniary loss by relying on the statements made by Defendant Seaman." Gautreaux disputed Seaman's version of events and claimed that when she learned on May 6 that Seaman planned to speak with McEachern, she told Seaman she did not consent to that and orally revoked her consent to share records with him. Gautreaux attached records from the Department related to the investigation, among other things. The Department emails showed that McEachern tried to obtain an investigation report into the abuse allegations. The Department responded that the investigation was conducted by "licensing and it is not considered CPS[,]" and they could not access the investigation which was marked "sensitive." Still, the Department emails indicated "that they found reason to believe for physical abuse and the severity is marked serious[,]" given the baby's age and that it was "popped" in a "vital organ area." Further, the email explained a witness would testify they are closing the foster home due to this incident.

34

"Under the Act, 'the evidence must be sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct.'" *USA Lending Group, Inc. v. Windstead PC*, 669 S.W.3d 195, 202 (Tex. 2023) (quoting *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018)). Evidence "'devoid of any specific facts illustrating how [the defendant's] alleged remarks about [the plaintiff's] activities actually caused such losses[]'" does not satisfy the TCPA's requirements. *See id.* (quoting *Lipsky*, 460 S.W.3d at 593).

Examining the evidence and pleadings in the light most favorable to Gautreaux as the nonmovant, she has failed to establish a prima facie case for each essential element of her medical malpractice claim by "clear and specific evidence." *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.005(c), 27.006(a); *see also Windrum*, 581 S.W.3d at 768 (requisite elements of medical malpractice action). Even accepting Gautreaux's version of events as outlined in her affidavit and the standards of care outlined by Eiseman, the evidence fails to explain how Seaman's disclosure to McEachern proximately caused any damages or what those damages were. *See Winstead*, 669 S.W.3d at 202. Rather, the evidence showed that Seaman's disclosure to the Department resulted in the children's immediate removal from her home, and that the ensuing investigation led to the closure of the foster home. In terms of her damages, Gautreaux merely states that she suffered "tangible and intangible harm" and "pecuniary losses" to be determined at trial. These are conclusory and

generalized statements, "'devoid of any specific facts illustrating how'" Seaman's disclosure to McEachern "'actually caused such losses.'" *See id.* (quoting *Lipsky*, 460 S.W.3d at 593). Gautreaux's evidence was not sufficient as a matter of law to establish damages if not rebutted or contradicted. *See Lipsky*, 460 S.W.3d at 590.

Accordingly, absent "clear and specific evidence" that Seaman's disclosure to McEachern proximately caused damages to Gautreaux, we hold that Gautreaux failed to establish a prima facie case for her negligence and medical malpractice claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *Winstead*, 669 S.W.3d at 202; *Lipsky*, 460 S.W.3d 590; *see also Windrum*, 581 S.W.3d at 768. We sustain issue three.

## D. Affirmative Defenses

In issue four, Appellants assert they established affirmative defenses to Gautreaux's claims. Since Gautreaux failed to meet her burden of establishing a prima facie case for the essential elements of her negligence and medical malpractice claim by clear and specific evidence, the burden did not shift back to Appellants to establish an affirmative defense on the negligence and medical malpractice claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)–(d); *Youngkin*, 546 S.W.3d at 679–80 (discussing TCPA's burden shifting); *Coleman*, 512 S.W.3d at 899 (same). Accordingly, we need not address this issue on the negligence and medical malpractice claim. *See* Tex. R. App. P. 47.1.

36

## IV. Conclusion

We conclude that Appellants' TCPA Motion to Dismiss established the TCPA's applicability to Gautreaux's negligence and medical malpractice claim, but Gautreaux failed to meet her burden of establishing a prima facie case by clear and specific evidence of each essential element of her negligence and medical malpractice claim. Thus, the trial court erred in denying Appellants' TCPA Motion to Dismiss Gautreaux's negligence and medical malpractice claim. With respect to the new causes of action raised in Gautreaux's First Amended Petition, including breach of fiduciary duty, negligent misrepresentation, fraudulent misrepresentation, fraud by nondisclosure, and breach of contract, we conclude that Appellants' TCPA Motion to Dismiss failed to address these causes of action. Accordingly, Appellants failed to establish the TCPA's applicability as to those claims. Therefore, we conclude the trial court did not err by denying Appellants' TCPA Motion to Dismiss with respect to the breach of fiduciary duty, negligent misrepresentation, fraudulent misrepresentation, fraud by nondisclosure, and breach of contract causes of action.

We affirm the trial court's Order denying Appellants' TCPA Motion to Dismiss Gautreaux's breach of fiduciary duty, negligent misrepresentation, fraudulent misrepresentation, fraud by nondisclosure, and breach of contract causes of action. We reverse the trial court's Order denying the TCPA Motion to Dismiss Gautreaux's negligence and medical malpractice claim and remand the case with

37

instructions to award court costs and reasonable attorney's fees to Appellants but only as to the negligence and medical malpractice claim and to the extent consistent with this opinion. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a).

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

W. SCOTT GOLEMON
Chief Justice

Submitted on June 24, 2024
Opinion Delivered October 10, 2024

Before Golemon, C.J., Johnson and Chambers, JJ.